DeWitt E. Wilbur v. William C. Stoepel and Joseph
E. Watson.

*Corporations— Contract of directors—Public policy — Estoppel —
Affidavit denying execution of instrument—Burden of
proof—Evidence.*

1. An agreement by two of the three stockholders of a corporation,
   who are also directors, that, in consideration of the purchase of
   stock, the vendee shall be employed as business manager for
   two years, and if at the end of that time he wishes to retire
   from the corporation they will repurchase his stock at a stated
   price, is void as against public policy, unless assented to by
   the other stockholder.

2. Such a contract is not severable, the void agreement to employ
   the vendee as manager affecting the whole contract.

3. The Court distinguish this case from *Seymour v. Rolling Mills*,
   56 Mich. 117, where the contract was made with the corpora-
   tion, while in this case it had nothing to do with the contract
   sought to be enforced.

4. Whenever the execution of an instrument is denied by affidavit
   under circuit court rule No. 79, the burden of proof is upon
   the plaintiff to show the execution of the instrument, which
   includes its delivery.

5. Litigants cannot be deprived of their right to except to instruc-
   tions by the court unless they have expressly requested them.

6. Where one of the issues of fact in a case is the consent or non-
   consent of a stockholder to an agreement made by the other
   stockholders in a corporation, and there is testimony tending
   to support both sides of the issue, an instruction on that sub-
   ject should call attention to both classes of testimony.

Error to Wayne. (Gartner, J.) Argued May 8, 1890.
Decided October 10, 1890.

*Assumpsit.* Defendants bring error. Reversed. The
facts are stated in the opinion.

*Charles K. Latham* (*F. A. Baker*, of counsel), for
appellant Stoepel.

*Edward W. Pendleton,* for appellant Watson.

*Parker & Burton* (*Alfred Russell,* of counsel), for plaintiff.

GRANT, J. This suit was brought upon the following written agreement:

"In consideration of the undertakings of DeWitt E. Wilbur, in connection of the Stoepel Lumber Company, and as part of the contract for the sale of $10,000 of the capital stock of said company by us to him, we hereby agree that if at the end of two years he decides to withdraw from said company we will repurchase the stock he buys of us, or so much of it as he may then have, for cash, at 80 per cent. of its par value; and if at any time during the first two years the said company dispenses with his services we agree to buy back the stock, on the same terms as above stated; but in either case we stipulate to have three months' time in which to take and pay for the same.

"WILLIAM C. STOEPEL.
"JOSEPH E. WATSON.

"April 1, 1884."

The first declaration filed in the case set forth the above agreement *in hæc verba,* and alleged that the defendants were large stockholders in the Stoepel Lumber Company; that they were desirous of selling 400 shares of its capital stock to plaintiff, and that he should become manager of the business; that he agreed to become a member of the corporation, and manager of its business, and that thereupon the above written contract was executed. The contract was not made with the company, but with two of its stockholders. One Herman R. Stoepel was also a large stockholder. This declaration did not allege any contract with him, verbal or written, nor any consent on his part to the agreement sued on, nor did his name appear in the declaration. Issue was duly joined, and the case came to trial. Upon that trial there was no evidence of consent on the part of Herman R.

Stoepel to the agreement, and the court held that the contract was void as against public policy, and thereupon the plaintiff withdrew a juror.

Plaintiff then filed an amended declaration, in which he alleged that the two Stoepels and Watson, on March 26, 1884, owned a saw-mill and the land on which it was situated, and that he owned a stock of goods; that they proposed to him to organize a corporation with a capital stock of $50,000, the above property to be turned over to the corporation, and plaintiff to pay in a certain amount in money; that they proposed to make him manager; with a salary of $1,500, to give him $10,000 worth of the capital stock, and to agree in writing that if at the end of two years he should desire to withdraw from the company they would purchase his stock at $8,000; that the formal organization was completed; that, before he had transferred his stock of goods to the corporation, Herman Stoepel refused and declined to join in making the written agreement, and that thereupon the defendants by themselves, and without said Herman, made said written agreement. The declaration is entirely silent as to any assent to the agreement, except the alleged verbal promise to make such an agreement, which it is alleged he refused to carry out. Issue was joined, and, upon the second trial, verdict and judgment were rendered for the plaintiff.

1. This alleged agreement between the defendants, who owned a majority of the stock, and the plaintiff, is contrary to public policy, and void as against those not consenting to it. The defendants were directors, and, in the management of the corporate affairs, cannot but be unduly influenced by such an agreement. Their natural desire and inclination would be to continue the plaintiff as manager, although it were against the interest of the other stockholders, and would be against their own as stockholders, but for the agreement which might render

them liable for the payment of a large sum if they failed to retain him. Nor is such contract made valid by the good faith of the parties to it. Its effect, upon stockholders who are not parties to it, or do not consent to it, is the same in the one case as in the other. The law therefore wisely condemns and prohibits all such contracts. The Supreme Court of the United States has so decided in a recent case, under facts very similar to the case at bar. *West v. Camden*, 10 Sup. Ct. Rep. 838, and authorities there cited.

The pivotal question in the case, therefore, was whether Herman R. Stoepel consented to the agreement. The learned circuit judge charged the jury that the agreement upon its face was void, but that there was evidence in the case that Herman did consent to it, and if he did the plaintiff was entitled to recover. The learned counsel for plaintiff seem to admit in their brief that there was no such evidence, but insist that defendants cannot complain, because their counsel admitted there was, by asking the court to instruct the jury that plaintiff could not recover unless they found that Herman consented to the agreement. We do not think this warranted the judge in charging that there was evidence, if such was not the fact. The establishment of such a rule would require greater care and caution on the part of counsel in the trial of causes than can well be exercised, and would often result in the defeat of justice. Litigants cannot be deprived of their right to except to instructions by the court unless they have expressly requested them. Requests by implication are not known.

A careful examination of the evidence is therefore necessary in order to determine whether this instruction was correct. The allegation in the declaration that Herman R. Stoepel made a verbal promise to make such an agreement is not sustained by the proof. On the contrary, by plaint-

iff's own evidence, he expressly refused from the beginning to make any such agreement. The agreement sued on was signed by defendants April 14, although dated April 1, as the latter was the date from which the operations of the corporation were to commence. Herman was not then present, and, if any consent was given by him which was binding upon him, it was given before April 14. This depends upon two conversations testified to by plaintiff, one in February, and the other on March 26, when the articles of association were signed. He testified that defendants read and offered to him a proposition to buy back his stock, should he withdraw at the end of two years, or should the company decide to dispense with his services. This proposition was unsigned. When first read, defendants and plaintiff alone were present. It was read again when Herman was present, and he said:

" That is all right, Mr. Wilbur, only I have not enough interest in it to guarantee it myself. Mr. Watson and brother Will here can do so if they like. I have no objections, but I have not money enough in it so that I would agree to it."

When the articles of association were signed, plaintiff says that the question of this contract was brought up again, and there was some talk about it, and Herman said, as before, that—

"He had not enough in it so that he cared to sign it, but he had no objection to Mr. Watson and W. C. Stoepel making that contract."

The above is the testimony of plaintiff upon the last trial. Upon the first trial he testified as follows, referring to the conversation on March 26:

"*Q.* How did it happen that Herman R. Stoepel did not sign this paper?

"*A.* At the time we were talking of this, at the time of the signing of it, H. R. Stoepel withdrew from the room. As he went out he beckoned to W. C. Stoepel.

W. C. Stoepel went out with him. W. C. Stoepel returned, but H. R. Stoepel did not. W. C. Stoepel said that H. R. Stoepel objected to signing the paper. Then Mr. Parker, who was doing my business for me, said: 'The business is all up unless Mr. Wilbur is willing to go on without any such guaranty.' I stated that I was not willing. Joseph E. Watson said: 'Will, you and I might make a contract with him, if he is willing to accept it.'"

Plaintiff admitted on the second trial that the above transaction occurred when the articles of association were signed, and not when the contract to repurchase the stock was signed. It is clear, therefore, from this record that up to the meeting of March 26, when the articles of association were executed, plaintiff wished to obtain Herman as a party to the contract of guaranty; that he was then unwilling to consummate the arrangement unless this was done; that no such contract was at that time made with defendants until after Herman had left; that plaintiff had never expressed to Herman his willingness to take the guaranty from defendants alone; that no intimation was made to Herman at the meeting, or at any other time, that any such contract was contemplated between plaintiff and defendants; and there is no evidence that Herman had any knowledge of the existence of such a contract until May afterwards, when he says Parker presented it to him for signature. Upon what principle can Herman R. Stoepel be held to have consented to a contract which he had never been informed was in contemplation? In order to make such a contract valid, which would be void without the consent of all the stockholders, there must be evidence that they had knowledge that it was to be made, and that they assented.

There is a further error in this instruction of the court. If there was evidence of consent he should also have instructed the jury that there was evidence of non-consent. Such a statement from the judge, without calling the

attention of the jury to the contrary evidence, certainly has a tendency to unduly influence them, and to give undue prominence to plaintiff's evidence. The testimony on the part of the defendants was certainly very strong that no such consent was given.

2. It is insisted by plaintiff's counsel that this contract was severable; that the contract to repurchase the stock after two years was independent of the agreement that the company should employ the plaintiff as manager; that the latter clause was fulfilled; that the former clause was not performed, and was enforcible in the present action. They cite, as sustaining this proposition, *Seymour v. Rolling Mills*, 56 Mich. 117. That case is not the parallel of the one at bar, and a careful examination convinces us that it does not sustain the proposition. In that case the contract was made with the defendant corporation, while in this the corporation had nothing whatever to do with the alleged contract. One of the material considerations for this contract was the agreement that plaintiff should be employed by the corporation as its manager. It is evident that but for this he would not have entered into the contract, and he so testifies. This, if void as against public policy, taints and vitiates the whole contract, and both law and equity provide no remedy for either party, but leave them in such a position as they have voluntarily placed themselves in.

3. There are other exceptions which, in view of the probability of a new trial, should be noticed. At the expiration of the two years, plaintiff gave notice of his withdrawal, tendered his stock to defendants, and demanded that they repurchase. They desired him to continue his employment. He was unwilling to do so, but finally did, upon the execution of the following memorandum:

"It is hereby agreed between the parties hereto as follows:

"*Whereas,* the Stoepel ʟumber Company has this day agreed to employ DeWitt E. Wilbur as manager, under the provisions of a certain contract, dated this 23d day of April, 1886.

"Now, therefore, in consideration of the advantage to us as stockholders of said company by reason of such employment, we agree that it shall make no change whatever in the mutual rights and responsibilities between said Wilbur and ourselves, made by contract of April 1, 1884, with reference to the repurchase of stock in said company, nor shall it affect any action taken thereunder.

"Dated this 23d day of April, 1886.

"W. C. Stoepel.
"Joseph E. Watson."

As to the effect of this memorandum the court instructed the jury as follows:

"That memorandum was made on the 23d day of April, 1886, whereby they agreed to further employ Mr. Wilbur, and that memorandum, gentlemen of the jury, is signed by William C. Stoepel and Joseph E. Watson. If William C. Stoepel and Joseph E. Watson knew of the condition of this former contract of April 1, 1884, the paper in evidence would estop them, and you will have to determine what the fact in that regard is. William C. Stoepel, when upon the stand, said that the paper was left there; he did not do anything with it, and was not aware, I think the testimony is, that Herman R. Stoepel did not sign it. If he was not aware of that fact, and did not know the exact condition of this paper, then there could be no estoppel; while, on the other hand, if he knew this at the time it was executed by himself and Mr. Watson, that would operate in the law as an estoppel."

The contention on the part of the defendants was that they signed the agreement with the understanding and upon the condition that Herman was to sign it also; that they left it with Parker to deliver when signed by him; and that at the time of making the said memorandum they supposed that it was signed by him, and to that effect was their testimony. In view of these facts,

the charge was correct. The memorandum spoke of a contract *made, executed.* If defendants used this language with a full knowledge of all the facts, they are certainly estopped from denying the execution of the contract.

4. The conversations and negotiations preliminary to the agreement, although merged in it, were still admissible, not for the purpose of explaining its terms, about which there was no doubt, but for the purpose of throwing light upon the question of the execution of the contract, and other questions connected therewith. The rulings of the court in this respect were correct.

5. Each of the defendants filed an affidavit with his plea, denying the execution of the contract. The court charged the jury that the burden of proof was on the defendants to show that the contract was not executed. In this the court clearly erred. Whenever the execution of an instrument sued on is denied by affidavit, under circuit court rule 79, the burden of proof is upon the plaintiff to show the execution of the instrument. No instrument is executed until delivered. In such case, delivery, which is an essential part of the execution, cannot be inferred from possession. The burden of proof remained throughout the trial upon the plaintiff.

6. The court admitted an unsigned memorandum of an agreement drawn up by Parker previous to the contract sued on as rebutting testimony. He testified that it was drawn pursuant to instructions or conversations, but from whom or with whom does not appear. Its admission was error. It was wholly incompetent and immaterial.

Judgment reversed, and new trial ordered.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred. CAHILL, J., did not sit.