McNAIR v. PARR.

1. CONTRACTS—PUBLIC POLICY—TRIAL—CROSS-EXAMINATION—PHYSICIAN AND PATIENT.

Since an agreement between defendant's family physician and a surgeon called in for the purpose of an operation,

that the surgeon should divide his fees with the physician, is against public policy and void, in a suit for the expense of the operation, defendant was entitled to wide latitude in cross-examination of plaintiff, and was entitled to show a tacit understanding, as claimed, growing out of previous dealings in similar cases between the two practitioners.

2. PHYSICIANS AND SURGEONS—CONTRACTS—ASSUMPSIT.

In an action by a surgeon as plaintiff for services performed in certain operations on defendant and his daughter, the court should have given a request preferred by defendant, that the plaintiff could not recover for services of defendant's family physician who assisted in the operations and who called plaintiff in to perform them, under an express arrangement or tacit understanding to divide the fees, to be charged by plaintiff; and a judgment that might, under the court's charge, have included the value of such services, was erroneous, since the other medical advisor, who was not a witness or party to the case, could not be bound or estopped, and might bring a separate action for his services.

Error to Kalamazoo; Knappen, J. Submitted June 10, 1913. (Docket No. 58.) Decided October 1, 1913.

Assumpsit by Rush McNair against Fred Parr for services rendered. Judgment for plaintiff. Defendant brings error. Reversed.

*Edward J. Anderson,* for appellant.

*Alfred J. Mills* and *Alfred S. Frost,* for appellee.

STONE, J. This is an action of assumpsit to recover for professional services as physician and surgeon in operating upon the defendant for hernia, and upon his daughter for appendicitis. The declaration was on the common counts in assumpsit, and the plaintiff filed a bill of particulars for the operations and the professional visits afterwards, which the testimony showed were included in the charge for opera-

tions. For each operation and the accompanying visits there was a charge of $200, and the total amount claimed in the suit was $400.

The plea was the general issue, and the notice thereunder claimed, among other things, that at the time the causes of action arose there existed between the plaintiff and one Cicero M. Stuck, a physician, who was then the defendant's physician, in the matters claimed for in said declaration, an unlawful agreement and combination, by which the said plaintiff and the said Cicero M. Stuck were to divide the fee which, it is claimed, this defendant was to pay the plaintiff for the surgical operations and professional visits mentioned in plaintiff's bill of particulars and declaration on file in the case, which combination was unlawful and void, as contrary to public policy, and in violation of the statutes and common law of this State.

Upon the trial the plaintiff testified that Dr. Stuck asked him to see the defendant, and went with him and introduced him to the defendant, and that Dr. Stuck assisted plaintiff in both operations, and on cross-examination he testified that he had operated a number of times on patients of Dr. Stuck covering a period of 15 years; that there was absolutely nothing said between Dr. Stuck and himself concerning the fees. He further testified as follows:

"I never had, as far as this case was concerned; there was nothing actually said about fees.

"Q. What do you mean?

"A. Mr. Parr and his daughter.

"Q. I mean in all these cases, if you had an understanding or talk with him what you were to charge him for operating on his patients?

"A. No, sir.

"Q. And did you not fix the rate for appendicitis with him at $100?

"A. No, sir.

"Q. Is not that what you charged his patients?

"*Mr. Mills:* I object to what he charged his patients.

"*The Court:* Yes.

"*Mr. Anderson:* I want to show what it is worth.

"*The Court:* I do not think that tends to show it.

"*Mr. Anderson:* Also to show that there was an established rate between them.

"*The Court:* I do not think the question proper.

"*Mr. Anderson:* An exception.

"*Q.* Isn't it a fact, Doctor, that you divided your fees with Dr. Stuck on those former cases?

"*Mr. Mills:* Objected to as incompetent, irrelevant, and immaterial; it is not pleaded.

"*The Court:* Yes.

"*Mr. Anderson:* The purpose is to show that Dr. Stuck, our physician, has always acted as the agent of Dr. McNair, unbeknown to us, and has received a commission or a part of a fee.

"*The Court:* I do not think that makes any difference; that might be so. Dr. McNair would have a right to charge what his services were worth, no matter what he does with the proceeds.

"*Mr. Anderson:* We offer it for the purpose of showing it was an unlawful understanding.

"*The Court:* I think the objection should be sustained at that; it will be sustained.

"*Mr. Anderson:* Note an exception.

"*Q.* Is it not a fact that it was understood between you and Dr. Stuck that you were to divide your fees in this case at issue, unbeknown to Mr. Parr?

"*A.* Dr. Stuck and I had absolutely not a word between us concerning Mr. Parr's case or that of his daughter.

"*Q.* Was it not the tacit understanding between you and Dr. Stuck that you were to divide your fees?

"*Mr. Mills:* The same objection.

"*The Court:* That is calling for the conclusion of the witness; the best evidence would be some conversation on the subject. The objection should be sustained.

"*Mr. Anderson:* It is offered for the same purpose.

"*The Court:* Yes.

"*Mr. Anderson:* Note an exception.

"*Q.* Is it not a fact that the understanding between

you and Dr. Stuck came about on account of your division of other cases?

"*Mr. Mills:* I object to it, and object to counsel inquiring along that line.

"*Mr. Anderson:* It is offered for the same purpose.

"*The Court:* The objection is sustained.

"*Mr. Anderson:* An exception to all of these rulings.

"*Q.* Did you intend to divide your fee which you received from Mr. Parr for his operation and his daughter's with Dr. Stuck?

"*Mr. Mills:* Objected to for the same reason.

"*Mr. Anderson:* An exception. We offer it for the purpose of showing it enhanced the doctor's charges against Mr. Parr for these operations.

"*The Court:* I think you may ask this question, if Dr. McNair made the charge against either of these people larger than his services would entitle him to because of any understanding he had with Dr. Stuck that he would divide with him? You can take an answer to that question.

"*A.* As I said before, there was no understanding between Dr. Stuck and myself, or any language justifying one that I entertained in my mind concerning it.

"*Q.* What was your former practice leading up to this time in regard to that?

"*Mr. Mills:* Objected to.

"*The Court:* I have ruled, I think; the question is whether he made his charge larger than he would ordinarily make it on occasions before that on account of Dr. Stuck, and he says, 'No.'

"*Mr. Anderson:* I offer it for the same purpose; an exception.

"*Q.* Hasn't it been your practice, generally, down to the time you operated on Mr. Parr, to divide your fees with the physician of the patients upon whom you operated?

"*Mr. Mills:* I object to that as incompetent, irrelevant, and immaterial, and a gratuitous insult to the witness.

"*The Court:* You can have an exception to that."

The plaintiff further testified that Dr. Stuck had called his attention to the case as one which required

an operation; that Dr. Stuck did not tell witness that he had any talk with defendant about plaintiff's charges, or what his fees would be for operating; that there was absolutely nothing said concerning any fees; and that plaintiff had operated for hernia upon several of Dr. Stuck's patients previous to the time he operated on the defendant. He did not know that Dr. Stuck had told defendant that plaintiff was to charge $40 to $60 for operating on him; that was not the regular fee he had been charging Dr. Stuck's patients for operations. He did not recollect that he had charged any of them over $100; that he had not paid Dr. Stuck anything, and did not pay the sisters for the hospital bill; that he charged $200 outside of all those expenses for his personal work.

Near the close of the testimony the plaintiff was recalled, and in answer to questions by the court testified as follows:

"*Q.* Did your bill include Dr. Stuck's bill, too, or was that just for your personal services?

"*A.* That was for the entire operation.

"*Q.* For what you did.

"*A.* That included my assistant's fees, also.

"*Q.* Dr. Stuck?

"*A.* Yes, sir.

"*Mr. Anderson: Q.* You had an arrangement with Dr. Stuck, did you, to divide your fees with him?

"*A.* I had no arrangement in regard to the matter at all; I expect to pay Dr. Stuck for his assistance.

"*Q.* How much of that fee were you to give Dr. Stuck?

"*A.* That will be according to what he considers it worth.

"*Q.* Don't you know that Fred Parr didn't know anything about the arrangement between you and Dr. Stuck?

"*A.* Fred Parr knew that Dr. Stuck was going to assist me because he was the family physician.

"*Q.* Don't you know that Fred Parr didn't know anything about the arrangement between you and Dr. Stuck?

"*A.* I don't know whether he did or not."

The defendant testified that he supposed he was to pay Dr. Stuck; that he never knew from Dr. Stuck or the plaintiff that he was to pay the plaintiff for Dr. Stuck's services.

The defendant requested the court to charge the jury that they could not allow plaintiff any money for the services of Dr. Stuck rendered at these operations. This request was refused. In its charge the court, in stating the plaintiff's claim, said:

"He claims, also, that in the operative part of it, it was necessary and customary for him to have other assistance to enable him to skillfully, correctly, and properly perform the operation, and that he became indebted to them; that their work was a part of his work; that they acted as his assistants—for all of which he charges $400. * * * What were the plaintiff's services fairly and reasonably worth, taking into consideration * * * the fact of the assistance that it was necessary for him to employ, if he did employ any, as you find from the testimony, and determine from all those facts what the fair compensation would be in these particular cases."

The jury returned a verdict for the plaintiff for $393 damages, and a judgment accordingly was duly entered.

The defendant has brought the case here on writ of error, and there are 50 assignments of error. Many of them possess no merit.

The first six assignments of error are based upon the rulings of the court above set forth, and relate to the offer and attempt of the defendant to show by the plaintiff, on cross-examination, that the understanding between the plaintiff and Dr. Stuck, defendant's family physician, was that the plaintiff was to split his fee with Dr. Stuck, which fact was unknown to defendant.

It is urged by appellant, and we think that the evidence warrants the claim, that it appears from the

record that Dr. Stuck was the defendant's family physician at the time these operations were performed, and had been employed in regard to the ailments for which the operations were performed to the knowledge of the plaintiff. The plaintiff, after testifying that his bill was only for his personal work, changed his position and testified, in answer to a question by the court, that his bill included Dr. Stuck's bill. He also testified that he did not know whether defendant knew anything about the arrangement between him and Dr. Stuck in regard to their fees. The testimony of the defendant was uncontradicted, that he knew nothing of any arrangement between the plaintiff and Dr. Stuck by which the latter was to get a part of the plaintiff's fee sued for in the case.

The cross-examination above set out was based upon the notice under the general issue, and the defendant sought to show a tacit understanding between the plaintiff and Dr. Stuck, growing out of their former practice in other similar cases, in the matter of a division of fees. We think that the trial court applied too strict a rule in the cross-examination of the plaintiff to the prejudice of the defendant. Considerable latitude should be allowed in cross-examination when fraud is claimed.

It is the claim of the defendant that Dr. Stuck could not be the agent of both of the parties to the suit, while he was at the same time assisting in these operations as the family physician of the defendant; and that he could not draw pay from both parties, without the knowledge of all the facts by the defendant; and that any tacit understanding or agreement between the two doctors of any division of the plaintiff's fees between them would be against public policy and void; and that defendant had a right to show that the plaintiff had charged an unreasonable sum for his services, in order to divide his fees with Dr. Stuck. That such a contract is against public policy

the defendant cites the following cases: *Flint, etc.,*
*R. Co.* v. *Dewey,* 14 Mich. 478; *Scribner* v. *Collar,* 40
Mich. 375 (29 Am. Rep. 541); *McNamara* v. *Gargett,*
68 Mich. 454 (36 N. W. 218, 13 Am. St. Rep. 355);
*Wilbur* v. *Stoepel,* 82 Mich. 344 (46 N. W. 724, 21
Am. St. Rep. 568); *Cleveland* v. *Miller,* 94 Mich. 97
(53 N. W. 961); *Friar* v. *Smith,* 120 Mich. 411 (79
N. W. 633, 46 L. R. A. 229); *Hannan* v. *Prentis,* 124
Mich. 417 (83 N. W. 102); *Hogle* v. *Meyering,* 161
Mich. 472 (126 N. W. 1063); 9 Cyc. pp. 481, 482; 31
Cyc. p. 1430.

We are of opinion that the above authorities sup-
port the claim of the defendant, and any agreement
of plaintiff to split his fees with Dr. Stuck, without
the knowledge of the defendant, would be void as
against public policy.

By the fiftieth assignment of error it is claimed
that the court erred in refusing to give the defend-
ant's request above referred to, which was to the
effect that the plaintiff could not recover for the ser-
vices rendered by Dr. Stuck. It is claimed by ap-
pellant not only that it appeared by the undisputed
testimony that Dr. Stuck was defendant's family phy-
sician acting for him, and for whose services he is
personally liable to Dr. Stuck, but also that the dec-
laration and bill of particulars make no charge for
such services, and that plaintiff is limited to his claim
therein. It should be noted that Dr. Stuck was not
sworn as a witness in this case, and he is not estopped
from bringing a suit and recovering for his services
rendered for the benefit of defendant in this matter
under our holding in *McCain* v. *Smith,* 172 Mich. 1
(137 N. W. 616); the services having been accepted
by the defendant.

If this judgment were to stand, the defendant may
have to pay twice for the services of Dr. Stuck. That
they are included in this judgment we have a right to
presume under the charge of the court; but the value

of such services does not appear. Dr. Stuck is not a party to or bound by this judgment, and might maintain a suit against the defendant for his services. We think there was prejudicial error in that part of the charge referred to.

We have examined the other assignments of error, and in our opinion they are without merit.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial granted.

MOORE, McALVAY, BROOKE, and KUHN, JJ., concurred with STONE, J. STEERE, C. J., and OSTRANDER and BIRD, JJ., concurred in the result.