KENNEDY v. STIMMING.

1. INTOXICATING LIQUORS—LICENSES—TRANSFER.
    A license to sell intoxicating liquors is personal and cannot be transferred to another.

2. SAME—ILLEGAL CONTRACT—VOID CONTRACT.
    A contract for the sale of a saloon business, which included as part of the transaction the transfer of a liquor license and holding part of the purchase price to indemnify the purchaser against criminal proceedings for illegal sales, and, if not so used, to be credited by the holder on the debt of the seller, is illegal and void, and the money so held was not subject to garnishment proceedings at the instance of a judgment creditor of the buyer after he had been dispossessed of the business and had made demand for the return of the money.

3. SAME—ACTION—VOID CONTRACT—STAKEHOLDER.
    The illegal contract having been executed in most respects, the position of the garnishee defendant is not analagous to that of a stakeholder, as it received the money not simply to indemnify the purchaser for breaking the law, but to apply, so far as not used for that purpose, upon its own claim against the seller; nor is this a case where the money can be recovered without showing the illegality of the contract; therefore, the law leaves the parties where they have placed themselves.

4. APPEAL AND ERROR—QUESTIONS RAISED—REVIEW.
    A question tacitly agreed upon by the parties, and not raised in the argument, will not be considered by this court.

Error to Kalamazoo; Weimer, J. Submitted April 12, 1916. (Docket No. 107.) Decided September 26, 1916.

Garnishment proceedings by Michael N. Kennedy, trustee in bankruptcy for the Hickory Grove Distilling Company, a corporation, against William A. Stim-

ming, and the Tivoli Brewing Company, garnishee defendant. Judgment for garnishee defendant. Plaintiff brings error. Affirmed.

*Jackson & Fitzgerald,* for appellant.

*Clark, Lockwood, Bryant & Klein,* for appellee.

In this action plaintiff seeks to recover judgment against the Tivoli Brewing Company, as garnishee, in an action brought against William A. Stimming, as principal defendant. The case was tried by the court without a jury, and the following facts were found by the circuit judge:

"The plaintiff, Michael N. Kennedy, as trustee in bankruptcy of the Hickory Grove Distilling Company, recovered a judgment in this court against the principal defendant, William A. Stimming, for $3,014.75, and began this action against the Tivoli Brewing Company, as garnishee defendant, to recover $1,500 alleged to be money in its hands belonging to said Stimming and to constitute a certain indebtedness from said brewing company to said Stimming. * * *

"On the 28th day of August, 1914, one Fred C. Ehrmann was a duly licensed retail liquor dealer and the owner of a retail saloon in the city of Kalamazoo. He was indebted to the garnishee defendant in the sum of $2,474 for liquors theretofore furnished him, to secure which he had previously executed and delivered to said garnishee defendant a chattel mortgage covering his stock and fixtures. On that day Ehrmann, Stimming, and the Tivoli Brewing Company entered into the following agreement (Exhibit A), attached to oral examination:

"'Whereas, Fred C. Ehrmann is engaged in the conduct of a saloon business at 301 North Burdick street, Kalamazoo, Mich., and is desirous of selling said business to William A. Stimming, of Kalamazoo, Mich.; and whereas, said Fred C. Ehrmann is indebted to the Tivoli Brewing Company of Detroit, Mich., in the sum of $2,474.70, which indebtedness is secured by chattel mortgage upon the stock and saloon business; and whereas, the

said Fred C. Ehrmann is indebted to other creditors in connection with said business in the sum of not more than $1,000, which sum constitutes his total indebtedness of every shape, kind, and nature:

"'Now, therefore, Fred C. Ehrmann (hereinafter referred to as first party), William A. Stimming (hereinafter referred to as second party), and Tivoli Brewing Co., a Michigan corporation (hereinafter referred to as third party), agreed between themselves as follows:

"'Said first party agrees to sell and said second party agrees to buy all of the stock of wines, liquors, cigars, good will, leasehold rights, license, and everything else pertaining to the business of said first party at 301 North Burdick street, Kalamazoo, Mich., for the sum of twenty-eight hundred dollars ($2,800.00), which sum said second party agrees to pay and first party accept in the following manner:

"'(1) Fifteen hundred dollars in cash at the date hereof, which sum shall be paid over to third party to be held until April 30, 1915, for the purpose of indemnifying said second party to the extent of that amount against any loss in the conduct of said business by reason of a legal objection raised by the authorities of Kalamazoo county to the conduct of said business by second party under a license now issued to first party, which license is in effect to April 30, 1915, and if on April 30, 1915, no such loss has occurred, then said party is to apply said $1,500.00 on account of the indebtedness of said first party to said third party secured by chattel mortgage aforesaid. Second party is to give third party immediate written notice at the time any objection is raised to the conduct of said business by second party.

"'(2) One promissory note for $700, payable in 90 days from date hereof, which note shall be payable to Tivoli Brewing Company, and, when fully paid by second party, shall be applied on account of indebtedness of first party to second party secured by chattel mortgage aforesaid.  ·

"'(3) The balance of $600 is to be retained by second party without interest until such time as first party shall deliver to second party satisfaction in the form of receipts in full for all debts now existing against first party, whether said debts be business debts or individual debts.

"'First party agrees to pay within eight months all of his individual and business debts and agrees to pay to second party any losses he may suffer by reason of having to pay any of said

debts under the Bulk Sales Law of the State of Michigan.

"'Third party agrees to discharge its chattel mortgage against said business when it has received the sum of $2,200 hereunder.

"'First party agrees to assign forthwith his lease of the premises at said 301 North Burdick street, and first party also agrees to secure from the owner of said premises his written consent to said assignment.

"'In witness whereof said parties have hereunto set their hands and seals this 28th day of August, 1914.

"'FRED C. EHRMANN. [Seal.]

"'WM. A. STIMMING. [Seal.]

"'TIVOLI BREWING Co. [Seal.]

"'By E. M. BAYNE,

"'Secretary and Treasurer.

"'In presence of:

"'HARVEY S. DURAND.

"'ALFRED T. GIBSON.'

"At the same time the payment of the sum of $1,500 mentioned in Exhibit A was made to the Tivoli Brewing Company by Mr. Stimming, the brewing company credited it to the account of Ehrmann, placed it with its other funds, and deposited it with its other deposits in the regular course of business in the bank with which it was doing business. This money was not at any time kept as a separate fund.

"Mr. Stimming assumed charge and control of Ehrmann's liquor business and conducted it as his own, retaining Ehrmann as a clerk, for which services Ehrmann was paid $18 per week until on or about the 18th of March following, at which time Ehrmann became involved in bankruptcy proceedings, and possession of the liquor business was either surrendered to him by Stimming or forcibly taken by Ehrmann or his attorney. At any rate, Stimming lost control, and Ehrmann resumed control of said business, either through difficulties or by an arrangement between them, and not through any legal objections raised or interference by the authorities of Kalamazoo county.

"Under date of March 19th, and on or about that day, Stimming forwarded the following communication to the garnishee defendant (Exhibit B), attached to oral examination:

"'KALAMAZOO, March 19, 1915.

"'TIVOLI BREWING COMPANY,

"'Detroit, Michigan.

"'Gentlemen:

"'You are hereby notified that objections have been raised to and I have been dispossessed of all my rights to the saloon and property therein at three hundred and one (301) North Burdick street, Kalamazoo, that I went into and took possession of under a bill of sale from Fred C. Ehrmann, dated August 28, 1914, and a tripartite agreement between yourself—the Tivoli Brewing Co. —said Fred C. Ehrmann, and myself, I was turned out and dispossessed only yesterday afternoon, and I at once hereby give you notice of the same as provided by said agreement I should, and I now demand the return to me by you of the sum of one thousand five hundred dollars ($1,500.00) I paid you as per agreement and that you pay it to me forthwith. Please attend to it at once and oblige

"'Yours truly,

"'WM. A. STIMMING.'

"Stimming had nothing to do with the management or control of the Ehrmann place of business thereafter, but it appears that no legal objection was ever at any time raised by the authorities of Kalamazoo county to the carrying on of said business by Stimming under the license issued to Ehrmann during any part of the license year, and that Stimming never sustained any loss by reason thereof for which there was any occasion for the Tivoli Brewing Company to indemnify him as provided in said contract."

The circuit judge also signed a finding of facts presented by plaintiff's counsel, but it does not differ in effect from the foregoing.

Upon the facts found the circuit judge held, as a matter of law, that the contract was illegal and void; that each party to it expected a personal benefit from its illegal provisions, and, it having been performed in whole or in part, Stimming himself could not have recovered from the brewing company the money paid over to it. And thereupon a judgment was entered in favor of the garnishee defendant; both parties to

the action agreeing that plaintiff could not recover if the principal defendant could not have maintained an action for the money. From this judgment the plaintiff appeals to this court.

PERSON, J. (*after stating the facts*). The contract was illegal and void. A license to sell intoxicating liquors is personal and cannot be transferred to another. *Koppitz-Melchers Brewing Co.* v. *Behm*, 130 Mich. 649 (90 N. W. 676); *Walhier* v. *Weber*, 142 Mich. 322 (105 N. W. 772); *Dierkes* v. *Wideman*, 143 Mich. 181 (106 N. W. 735). It is shown on the face of the contract that all of the parties had a criminal prosecution in mind, and were aiming to protect Stimming if he should be arrested for making sales without a proper license.

Counsel for plaintiff are mistaken in their claim that the garnishee defendant occupied a position analogous to that of a stakeholder. It received the $1,500 paid by Stimming, not simply to indemnify him for breaking the law, but to apply, so far as not used for that purpose, upon its own claim against Ehrmann. It was a payment by Stimming of so much of the purchase price of the property sold to him by Ehrmann, and was, in effect, a payment to Ehrmann. It went into the garnishee's hands, not as the money of Stimming, but as the money of Ehrmann.

The postponement of the application of the money upon Ehrmann's indebtedness was a matter between Ehrmann and the garnishee, in which Stimming had no interest. And the purpose of the postponement was to ascertain how much might remain to be applied after Stimming should have been indemnified.

Whatever may be the rule as to the right of a party to reclaim his property while the illegal contract remains executory, that rule can have no application to this case. This contract had been executed in most,

if not all, respects, before any claim was made for a return of the money in the hands of the garnishee defendant. A part of the purchase price of the property had been paid in cash and notes given for the balance, the property had been delivered to Stimming, and the control of the business had been in his hands for several months. Nor is this a case where the money can be recovered without showing the illegality of the contract. Under these circumstances the law leaves the parties where they have placed themselves. In addition to the cases above cited, see *Bryant* v. *Wilcox,* 137 Mich. 669 (100 N. W. 913); *Benson* v. *Bawden,* 149 Mich. 584 (113 N. W. 20, 13 L. R. A. [N. S.] 721); *Cashin* v. *Pliter,* 168 Mich. 386 (134 N. W. 482, Am. & Eng. Ann. Cas. 1913C, 697); *McNair* v. *Parr,* 177 Mich. 327 (143 N. W. 42).

Inasmuch as it has been tacitly or expressly conceded by the parties that plaintiff cannot maintain this action against the brewing company if Stimming could not have maintained one for the money which he paid over to it, and as there has been no argument on the point, it will not be considered in this opinion.

The refusal of the court to find the facts in accordance with plaintiff's seventh request was not error; and if the facts had been found as requested the disposition of the case could not have been different.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.