WALLACE T. MILLER, Respondent, *v.* FRANK A. VANDERLIP, JR., and Others, as Executors, etc., of FRANK A. VANDERLIP, SR., Deceased, Appellants, Impleaded with WILLIAM LOEB, JR., and Others, Defendants.

First Department, May 31, 1940.

*Albert Parker* of counsel [*Lewis & Kelsey*, attorneys], for the appellants.

*William W. Pellet* of counsel [*G. Kenneth Brown* with him on the brief, attorney], for the respondent.

GLENNON, J. There are two causes of action set forth in the complaint. The first is for breach of contract; the second is for conspiracy. After issue was joined, the appellants made a motion at Special Term for judgment on the pleadings. The appellants at Special Term, where the motion was denied, and upon this appeal contend that the alleged contract upon which the plaintiff relies is illegal and, consequently, to enforce it would be contrary to the public policy of this State. Since we believe that the contention of the appellants is correct, we will refer only to the allegations contained in the first cause of action, as the second cause of action, which sounds in tort, must fall if the first cause of action, which is for breach of contract, cannot be sustained.

Plaintiff has alleged that the Reo Motor Car Company is a Michigan corporation with an authorized capital stock of 2,000,000 shares of five dollars par value and that all except 200,000 are issued and outstanding; the business of the corporation is the manufacture of automobiles; the company had been operating at a loss with the result that certain stockholders became dissatisfied with the policy of the directors; some of the stockholders came to plaintiff, who had wide experience in the automobile field, and asked him to interest outstanding figures in the business world with a view to rehabilitating the company. Plaintiff succeeded in interesting the appellants and codefendants; all of the

parties agreed with the plaintiff that the best way to bring about the rehabilitation of the company was by the directors' adoption of a plan whereby services of a sufficient number of competent and qualified persons could be obtained as officers and employees to revitalize the company. As part of the plan, the officers and employees were to be given an interest in the profits which the company would make as the result of its approval. All of the defendants as well as a certain committee of stockholders agreed that plaintiff was a proper and competent person to become president and general manager in accordance with the plan and that he would be able to bring about an improvement in the condition of the affairs of the company to the extent that it would be operated at a profit.

Then it is alleged that, in order to carry out the objects of the plan, the defendants named entered into an agreement with the plaintiff to organize a committee of stockholders of the company for the purpose, in so far as within their power lay, of bringing about an increase in the authorized number of directors of the company and the election of directors for the purpose of effecting the rehabilitation by the consideration of the plan substantially as outlined by the parties.

Further, it is alleged that the defendants agreed that each of them would and should endeavor, in a legal and proper manner, to effect such increase of directors and the adoption of the plan; " as part of such plan said parties and said committee agreed among themselves and with the plaintiff that it would be for the best interest of said corporation to have said corporation enter into a contract whereby the plaintiff should become President and General Manager thereof for three years, at a salary of approximately Nine Thousand ($9,000.00) Dollars per year, and that the Board of Directors authorize calls or options for three years on the 200,000 shares of unissued stock of said corporation at $5.00 per share, to be used for the purpose of obtaining the services of competent and qualified employees as hereinbefore set forth, and for such other purposes as would be beneficial to said corporation, and plaintiff was at all times ready, willing and able to enter into and carry out such contract on his part."

It is then alleged, in substance, that it was agreed among the defendants, the committee and plaintiff, that the plaintiff should advance to the committee a substantial sum of money for expenses and should devote his efforts toward bringing about an increase in the number of directors " to the end that said plan might be laid before said Board of Directors for consideration." As part and parcel of the plan and in the event that it was approved by

the board of directors, plaintiff was to receive a contract from the company whereby he was to be employed as president and general manager thereof for a period of three years at a salary of $9,000 per annum. Furthermore, he was to receive an option from the company to purchase 38,000 shares of the unissued capital stock at five dollars per share, regardless of the market value. He has alleged, in addition thereto, that he advanced the sum of $3,000 to the stockholders' committee for expenses and devoted his time and efforts toward securing the election of directors who were satisfactory to the committee and the defendants. As a result of his efforts, the board of directors was increased from five to nine members.

In effect, it is alleged then that, had the defendants submitted the plan to the board of directors and in good faith advocated its adoption, the plan would have been approved by the board of directors. The defendants failed to cause the plan to be submitted to the board of directors and failed to advocate its adoption, and by reason thereof the plan was never considered or adopted and plaintiff was neither offered a contract with the company for his services as president and general manager nor a call on the unissued shares of capital stock; as a result, plaintiff suffered damages in the sum of $179,000.

We are inclined to the view that the complaint in this action cannot be sustained. While it is alleged that had the so-called plan been submitted to the new board of directors it would have been approved, it does not follow therefrom that such a result would have been accomplished. The defendants could not control the action of the board of directors so as to bring about the election of plaintiff as president and general manager for a period of three years, nor could they compel the directors to give him an option to purchase 38,000 shares of the unissued stock. Even though the defendants were elected to the board, and it does not appear that they were, they could not bind their future conduct in the manner outlined in the plan.

The plan did not provide for plaintiff's membership on the board of directors. He does not assert that he was elected a member at the annual meeting. In order to be eligible for the office of president under the provisions of section 60 of the Stock Corporation Law, plaintiff would have to be a member of the board to qualify as president of the company. Section 60, so far as pertinent, reads as follows: " The directors of a stock corporation may appoint or elect from their number a president  *  *  *.  The directors may require any such officer  *  *  *  to give security for the faithful performance of his duties, and may remove him at pleasure." *

The situation here outlined is somewhat similar to that which was presented in *Copeland* v. *Melrose National Bank* (229 App. Div. 311; affd., 254 N. Y. 632). There Copeland had a written contract with the bank to employ him as a vice-president for three years at a stipulated salary payable monthly. The bank discharged the plaintiff during his term of employment. Copeland instituted an action for damages. The bank, as a defense, relied upon section 5136 of the Revised Statutes of the United States (U. S. Code, tit. 12, chap. 2, § 24) which read, in so far as applicable, as follows: " * * * it [a national bank] shall have power * * * to elect or appoint directors, and by its board of directors to appoint a * * * vice-president, cashier, and other officers, define their duties, * * * dismiss such officers or any of them at pleasure, and appoint others to fill their places." Incidentally, it will be noted that the wording of the Federal statute is practically the same as section 60 of the New York Stock Corporation Law. This court and the Court of Appeals upheld the bank's contention. Mr. Justice SHERMAN of this court said in part: " Plaintiff's engagement was merely a hiring, terminable at the will of the directors. The intent of the statute was to place the fullest responsibility upon the directors by giving them the right to discharge such officers at pleasure. A contract for a definite term which forbids such discharge except under penalty of paying compensation for the full term violates the statute, and is unenforcible. To uphold the liquidated damage provision of the contract would be to countenance a patent subterfuge designed to circumvent the law. It is idle to say that the statute merely gives the power to discharge the official, without the right to do so. The grant of the power carries with it the untrammeled right to its exercise, free from penalty." Here the plaintiff did not have a contract. All he had was the hope that one might be awarded to him.

It will be remembered that plaintiff's claim for damages is based upon the theory that he would have received $9,000 per annum for a period of three years for his services as president and general manager and it also includes the loss which he may have sustained, by reason of the failure on the part of the company, to give him an option to purchase at par 38,000 shares of the unissued capital stock. Even though such an arrangement was made by the plaintiff and the defendants, it would be unenforcible and contrary to the public policy of this State. (*McQuade* v. *Stoneham*, 263 N. Y. 323; *Fells* v. *Katz*, 256 id. 67; *Manson* v. *Curtis*, 223 id. 313; *West* v. *Camden*, 135 U. S. 507.) "A contract in regard to elections in private corporations is not legal if it provides that a lucrative corporate position shall be given to one or more

of the parties to the contract." (3 Cook, Corporations [8th ed.], § 622a.) Our attention has been directed to the case of *Wilbur* v. *Stoepel* (82 Mich. 344; 46 N. W. 724) where the holding is to the same effect. Since the company here under consideration was organized under the laws of the State of Michigan and the board of directors was elected at the annual meeting held at Lansing in that State, it would seem apparent that even there plaintiff could not succeed in an action based upon his present claim. (*Scripps* v. *Sweeney*, 160 Mich. 148; 125 N. W. 72.)

The case of *Clark* v. *Dodge* (269 N. Y. 410) is distinguishable. There plaintiff owned twenty-five per cent of the stock and the defendant owned seventy-five per cent. The action was for specific performance and was based upon a written contract which had been entered into between the parties. After reviewing the allegations contained in the complaint, Judge CROUCH wrote in part: " If the enforcement of a particular contract damages nobody — not even, in any perceptible degree, the public — one sees no reason for holding it illegal, even though it impinges slightly upon the broad provision of section 27." Here 1,800,000 shares of the company's stock had been issued to the public. Had the stockholders known that a plan such as that outlined by the plaintiff was to be submitted to the directors of the company and there was a possibility of its approval, they well might have refrained from casting their votes in favor of the nine persons who were elected directors at the annual meeting. In so far as these defendants are concerned, it does not appear that any of them had a right to vote at the annual meeting by virtue of ownership or control of any of the outstanding stock.

For the reasons assigned, the order should be reversed, with twenty dollars costs and disbursements, and the motion granted.

MARTIN, P. J., UNTERMYER and DORE, JJ., concur; O'MALLEY, J., dissents and votes to affirm.

O'MALLEY, J. (dissenting). Giving the allegations of the complaint every fair intendment to which they are entitled, it sets forth facts sufficient to constitute a cause of action. The plan outlined for the rehabilitation of the company was not tainted with illegality and did not offend the public policy of this State. The complaint does not show that the defendants were members of the board of directors or even stockholders. Therefore, it cannot be said that their future conduct with reference to the company's affairs either could or would be influenced by any possible ulterior motive. It is alleged that the plan was for the best interests of the corporation.

I, therefore, dissent and vote for affirmance.

Order reversed, with twenty dollars costs and disbursements, and motion granted.