## REILLY v. BEEKMAN.

Circuit Court of Appeals, Second Circuit.
March 12, 1928.

No. 201.

1. **Appeal and error ☞553(1)—Paper stipulated by attorneys to be transcript, and certified by clerk, held not "bill of exceptions."**

Paper stipulated by attorneys to be transcript of record in District Court, certified by clerk as correct transcript, "as agreed on by the parties," held, not "bill of exceptions."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Exceptions.]

2. **Appeal and error ☞539—Only judge's minutes, as settled and allowed by him, may constitute record of trial.**

Only judge's minutes, as settled and allowed by him, may be record of trial; stipulations of parties being insufficient.

3. **Appeal and error ☞516—Minutes are not part of record, without judge's action.**

The judge's minutes are no part of record, until made so by judge.

4. **Appeal and error ☞544(1)—Without bill of exceptions, record is limited to pleadings, process, verdict, and judgment.**

Bill of exceptions is necessary to make transcript part of record, and, without one, record is limited to pleadings, process, verdict, and judgment.

5. **Appeal and error ☞544(2)—Only question for review is whether judgment is justified, in view of pleadings, in absence of bill of exceptions.**

In absence of bill of exceptions, in which case record was limited to pleadings, process, verdict, and judgment, only question open for consideration on writ of error is whether judgment was justified, in view of pleadings.

6. **Contracts ☞108(2)—Fiduciary, recommending attorney, cannot make valid agreement with attorney for division of fees to be received.**

One who is in fiduciary relation to another, and recommends attorney to her, cannot law-

fully agree with attorney to profit from business arising out of introduction by division of fees, without her knowledge and consent, since she is entitled to his disinterested advice as to attorney, and such contract would be against public policy.

**7. Contracts ⬅108(2)—One offering as friend to recommend attorney to another cannot, without such other's knowledge, make valid contract with attorney for division of fees.**

One offering merely as friend to recommend attorney to another cannot, without such other's knowledge, make valid contract with attorney to profit from business to be obtained by division of fees, since such contract would be against public policy.

**8. Contracts ⬅105—Attorney's agreement to divide fees with one bringing business to him is bad, if he knew the other party was not a lawyer (Penal Law N. Y. § 274).**

Agreement by attorney to pay another one-half of fees received in legal business brought to him by such other is bad, under Penal Law N. Y. § 274 (Consol. Laws N. Y. c. 40), if attorney knew that the other party was not a lawyer.

**9. Contracts ⬅113(3)—Contract for division of legal fees from business brought by plaintiff recommending lawyer to fiduciary is not made valid by disclosure to fiduciary that plaintiff would receive part of amount claimed.**

In action against attorney under contract for division of fees from business brought to defendant by plaintiff, who recommended defendant to fiduciary, disclosure to fiduciary that plaintiff was to receive $50,000 *held* insufficient to make contract valid, where plaintiff's share would be $300,000, since disclosure to fiduciary must be full.

**10. Contracts ⬅141(1)—Plaintiff, claiming division of attorney's fees from business brought to defendant, whom plaintiff recommended to fiduciary, must prove full disclosure to fiduciary.**

In action against attorney, under contract for division of fees from business brought to defendant by plaintiff, who recommended defendant to fiduciary, burden is on plaintiff to show that there was full disclosure of arrangement to fiduciary.

**11. Pleading ⬅35—In action against attorney for division of fees, defendant's allegation that plaintiff stood in fiduciary relation to client set up good defense, and other allegations were surplusage.**

In action against attorney, under contract for division of fees from business brought by plaintiff, defendant set up good defense by alleging that plaintiff stood in fiduciary relation to client, and everything else in defense was mere surplusage.

**12. Estoppel ⬅110—Release ⬅45—Waiver or release must be affirmatively pleaded.**

Waiver or release must be affirmatively pleaded, to receive consideration.

**13. Appeal and error ⬅907(3)—In absence of bill of exceptions, everything necessary to support direction of verdict in trial court is conclusively presumed proved at trial.**

In absence of bill of exceptions on writ of error to review judgment on directed verdict, everything necessary to support direction of verdict is conclusively presumed to have been proved at trial.

In Error to the District Court of the United States for the Southern District of New York.

Action by William F. Reilly to recover for the alleged breach of a contract made by Henry M. T. Beekman with him, whereby Beekman was to pay Reilly one-half of whatever fees Beekman might charge in any legal business that Reilly brought to him. Judgment for the defendant, and plaintiff brings error. Affirmed.

The complaint alleged that the defendant was an attorney at law admitted to practice in the New York courts; that on or about July 13, 1921, at New York City, the plaintiff entered into an agreement whereby, in consideration of the plaintiff's furnishing to the defendant an introduction to a prospective client, the defendant agreed to pay to the plaintiff one-half of whatever fees he might charge in legal business created by such introduction; that pursuant to such agreement the plaintiff introduced to the defendant one Beatrice F. Trenkman, who thereupon employed the defendant to institute certain legal proceedings and actions on behalf of herself and others, and as a result of the actions and proceedings, and settlements obtained thereon, the defendant received fees at least equal to $600,000; that plaintiff was entitled to receive out of such moneys, pursuant to the agreement, $302,500, and demanded payment of the same from the plaintiff, but no part was paid, except $50,000.

The defendant interposed various denials and separate defenses to the allegations of the complaint, but the only allegations here material were embodied in the "sixth separate defense," which was as follows:

"22. On information and belief that for a long time prior to the times mentioned in the complaint the plaintiff had been engaged in giving advice on financial and insurance matters to a member of the family of Mrs. Beatrice F. Trenkman, mentioned in the complaint, and had then caused himself to be accepted as a business and financial adviser by the said Mrs. Trenkman, and in the course of giving her said advice advised her to employ a lawyer whom he would rec-

ommend, and recommended to her the employment of the defendant, which recommendation the said Mrs. Trenkman accepted; that in making said recommendation to the said Mrs. Trenkman the plaintiff occupied toward her a position of trust and confidence, calling for the highest good faith on the part of the plaintiff; that the said plaintiff, however, in violation of the said trust and confidence reposed in him by the said Mrs. Trenkman, did not, at the time of the recommending and employment of the said defendant by the said Mrs. Trenkman, or at any time, disclose to her that he had an agreement to share in the compensation which she might afterwards pay to the defendant.

"23. That for said reasons the contract alleged in the complaint herein is contrary to good morals, is of no effect and unenforceable, and contrary to public policy, and nothing is due from the defendant to the plaintiff."

A reply to this separate defense denied each allegation thereof.

A trial was had upon the foregoing issues before Judge Pollock and a jury, and at the close of the case, according to the extract from the clerk's minutes, the defendant's attorney moved to dismiss the complaint and for a direction of a verdict for the defendant. Thereupon the court directed a verdict for the defendant on the sixth separate defense, and a judgment followed for the defendant thereupon. The plaintiff sued out a writ of error, but no bill of exceptions was ever settled or filed, though there is in the printed papers submitted to us what was stipulated by the attorneys in the case to be a transcript of the record of the District Court. The clerk certified to this as a correct transcript of the record "as agreed on by the parties." The counsel for the plaintiff in error seeks to treat this stipulated transcript as a bill of exceptions, and contends that the judgment should be reversed, both because no such judgment as was entered could follow from the pleadings, and because upon the evidence appearing in the stipulated transcript there was a question for the jury as to the truth of the allegations in the defense that the plaintiff advised Mrs. Trenkman to employ a lawyer, that he recommended the employment of the defendant, and that in so doing he occupied toward Mrs. Trenkman a position of trust and confidence, and that he failed to disclose to her that he had an agreement to share in the compensation which she might afterwards pay to the defendant.

24 F.(2d)—50½

Now the most favorable evidence for the plaintiff appearing in the record was to the effect that on July 13, 1921, the defendant wrote to plaintiff: "I am willing and agree to give you one-half of whatever fees I may charge in any legal business that you bring to me."

In August, 1921, plaintiff said that he told defendant that Mrs. Trenkman and her uncle had discussed in his presence an agreement for the disposition of the properties of the uncle and the latter's mother, who was Mrs. Trenkman's grandmother; that they had arrived at an agreement, and asked plaintiff to procure a lawyer; that plaintiff told defendant that, before he would introduce him to Mrs. Trenkman, he wished to discuss the arrangement under which defendant was to receive the business after the introduction, and thereupon the defendant said that any business procured, directly or indirectly, through the introduction, was included in their previous contract, and plaintiff would receive 50 per cent. of the fees. Plaintiff testified that he had a consultation with Mrs. Trenkman and her uncle, in which they asked him to get a lawyer. He thereafter procured the defendant, who did the business for Mrs. Trenkman, for which he received $595,000. Plaintiff further testified that Mrs. Trenkman had told him that defendant had said to her that "he was taking care of" plaintiff, and that defendant a few days after this told plaintiff that he had informed Mrs. Trenkman "that he was taking care of" plaintiff. Mrs. Trenkman testified that defendant told her, when she paid him $500,000, that he had given plaintiff $50,000, for the introduction and various other things; but there was no evidence that Mrs. Trenkman knew that plaintiff had an agreement to receive more. Plaintiff gave defendant a receipt for $50,000 in full for all claims to date, and for services in interviewing witnesses and bringing them to defendant's offices. At this time defendant had received $500,000 from Mrs. Trenkman for his services, but plaintiff was informed by defendant that defendant had received but $150,000, and was obliged to pay out $50,000 of it in expenses. When plaintiff learned of defendant's further receipts he brought this action.

Olvany, Eisner & Donnelly, of New York City (James F. Donnelly and Samuel Michelman, both of New York City, of counsel), for plaintiff in error.

Parker, Marshall & Auchincloss, of New York City (H. Snowden Marshall and Clar-

ence L. Sager, both of New York City, of counsel), for defendant in error.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). [1, 2] It is true that the so-called transcript of record was filed within the extended term, but it was not a bill of exceptions. The certificate of the clerk, who could have no knowledge of the testimony taken at the trial, was confessedly based only on the stipulations of the parties, and not on the judge's minutes as *settled and allowed by him,* which alone could be the record of the trial.

[3] The minutes are no part of the record, until made so by the judge. Metropolitan R. R. Co. v. District of Columbia, 195 U. S. 322, 25 S. Ct. 28, 49 L. Ed. 219; Young v. Martin, 8 Wall. 354, 19 L. Ed. 418; Duluth St. Ry. Co. v. Speaks (C. C. A.) 204 F. 573; Chicago Great Western R. Co. v. Le Valley (C. C. A.) 233 F. 384; Fraina v. United States (C. C. A.) 255 F. 28; Buessel v. United States (C. C. A.) 258 F. 811. As Chief Justice Marshall said in Lessee of Fisher v. Cockerell, 5 Pet. at page 254, 8 L. Ed. 114: "The unauthorized certificate of the clerk that any document was read, or any evidence given, to the jury, cannot make that document or that evidence a part of the record, so as to bring it to the cognizance of this court."

[4, 5] A bill of exceptions was necessary to make the so-called transcript a part of the record, and without one the record is limited to "the pleadings, the process, the verdict, and the judgment. * * *" Clune v. United States, 159 U. S. 590, 16 S. Ct. 125, 40 L. Ed. 269. In view of the foregoing, the only questions really open for consideration are whether the judgment was justified in view of the pleadings.

[6-8] It cannot be disputed that, if Reilly was in a fiduciary relation to Mrs. Trenkman when he recommended Beekman to her as her attorney, he could not agree to profit from the business arising out of the introduction without her knowledge and consent. This is because Mrs. Trenkman was entitled to his disinterested advice as to the attorney to be recommended to her. That advice was not likely to be disinterested, if affected by the consideration of whether or not he could make a profit out of the recommendation of a particular person. Moreover, she was entitled to have him recommend an attorney, the amount of whose fees would depend on the services he had to perform, and would not be affected by what he had to pay out to the plaintiff for an introduction to the client. Auerbach v. Curie, 119 App. Div. 176, 104 N. Y. S. 233; Alpers v. Hunt, 86 Cal. 78, 24 P. 846, 9 L. R. A. 483, 21 Am. St. Rep. 17; McNair v. Parr, 177 Mich. 327, 143 N. W. 42. If she knew Reilly's interest, and what he was to receive, and consented to the arrangement, the case would be different. She might be willing to sanction it, because it would save her from paying Reilly for his advice, or for other reasons. If, as is contended, Reilly was not acting in an ordinary sense as an agent for Mrs. Trenkman in respect to her business and financial affairs, and simply as a friend recommended a lawyer, when requested so to do, we think he stands in no better position. To be sure, in that case he would be only a volunteer; but if he offered merely as a friend to recommend an attorney, with no knowledge on her part that he was to derive any benefit from the recommendation, she was deprived of the disinterested advice which he assumed to give when he was under the pay of Beekman in making the recommendation.

This principle was clearly recognized in Bollman v. Loomis, 41 Conn. 581, Holcomb v. Weaver, 136 Mass. 265, Wyburd v. Stanton, 4 Esp. 179, and Williston on Contracts, vol. 3, p. 3035. The fact that he was a volunteer could make no difference. The objectionable feature was that he assumed to act as an apparently disinterested person, when under pay from Beekman for doing the very thing which he undertook to do for Mrs. Trenkman. In such circumstances the law regards the contract on which recovery is sought as unenforceable, because against public policy. The guilt or innocence of Beekman does not affect this result. If he knew that Reilly was not a lawyer, the agreement was bad under the provisions of section 274 of the New York Penal Law (Consol. Laws, c. 40). Defendant denied that he had such knowledge, and said, when he first acquired it, he repudiated the arrangement. If he knew that the plaintiff was acting in a fiduciary relation for Mrs. Trenkman and agreed to pay him for a recommendation, he was aiding a breach of trust; but he denied that he did more than to pay Reilly for work done.

[9, 10] But it is said that Mrs. Trenkman knew that Reilly had an interest in Beekman's fees and consented that he be paid by the latter. It is true that there was testimony in the case that Mrs. Trenkman was told by

Beekman that "he was taking care of" Reilly, and that he had paid Reilly $50,000 for the introduction and various other things. This was very different from the full disclosure which Reilly was bound to give to secure her consent to his 50 per cent. contract with Beekman. It is not apparent even that she thought Reilly was really paid other than for services in connection with the law business on which Beekman was engaged. At any rate, a disclosure had to be complete to avoid the illegality which otherwise affected the agreement. It certainly might have made a great difference to Mrs. Trenkman whether she knew she was in effect paying a fee of $500,000 or $600,000, 50 per cent. of which was wasted on the plaintiff, or that he was only getting an indefinite amount, presumed to be reasonable, or just the sum of $50,000. The disclosure was too indefinite a one on which to base a consent to the contract sued upon. It at most only went far enough to cover the payment of the $50,000, of which Mrs. Trenkman acquired knowledge. It had to be full, and the burden to prove that it was is on the agent. Dunne v. English, L. R. 18 Eq. Cas. 524; Liquidators of Imperial Mercantile Credit Ass'n v. Coleman, L. R. 6 H. L. 194. Moreover, there is nothing in the testimony to show that Reilly ever told Mrs. Trenkman that he had any interest in Beekman's fees, or even that Mrs. Trenkman was told by Beekman that he had to take care of Reilly at or before the time when she employed Beekman.

[11, 12] It is contended finally that the illegality of the contract was not raised by the pleadings, because the "sixth separate defense" only alleged that Reilly "did not, at the time of the recommending and employment of the * * * defendant by * * * Mrs. Trenkman, or at any time, disclose to her that he had an agreement to share in the compensation which she might afterwards pay to the defendant," and failed to allege that it was made with the knowledge and consent of Mrs. Trenkman. It is our opinion that the defendant set up a good defense when he alleged that the plaintiff stood in a fiduciary relation to Mrs. Trenkman, and everything else was mere surplusage. That allegation set forth an illegal contract, and called for pleading in the reply by way of confession and avoidance, which would show something in the nature of a waiver of Mrs. Trenkman's right to object to a contract which was prima facie void as against public policy. It is hardly necessary to say that a waiver or release must be affirmatively pleaded.

It is said that the complaint was good, and was so held by Judge Mack on a demurrer to one of the defenses; but that is of no moment, for the complaint alleged the breach of what was pleaded as an ordinary contract perfectly valid on its face. It set forth no fiduciary relation of Reilly to Mrs. Trenkman, and no advice on his part to her to employ Beekman as a lawyer. In Auerbach v. Curie, 119 App. Div. 175, 104 N. Y. S. 233, the complaint alleged that the layman suing the lawyer had made his contract for a division of the lawyer's fees with the knowledge and consent of the client, and the plaintiff failed to prove it. Undoubtedly nothing but a general denial was necessary in that case, in order to meet a complaint which set forth the entire arrangement as a basis for recovery. It is hard to see why the plaintiff here, by setting up a cause of action which did not disclose all the facts, should be relieved from the burden of pleading a consent which he must prove in order to recover, and which he should have pleaded in the first place.

We think it clear that there is no evidence properly before us, because no bill of exceptions was settled, allowed, or filed. We have gone out of our way to discuss the testimony appearing in the so-called transcript of record, as was done in Fraina v. United States (C. C. A.) 255 F. 28, where Judge Hough said there was no bill of exceptions, in order to show that, even on plaintiff's own attempted showing, he adduced no testimony in support of his cause of action sufficient to justify a submission to the jury, and was bound, even if he had perfected his record, to fail on the merits. [13] The record *properly* open for consideration consists of the writ of error, petition for the writ of error, the citation, assignment of errors, the summons and complaint, the answer, the reply, the extract from the minutes, and the judgment. The only assigned error which can properly be considered on this record is the supposed one of directing a verdict for the defendant upon the sixth separate defense. We hold that defense to have been sufficiently pleaded. That being so, in the absence of a bill of exceptions, everything necessary to support the direction of the verdict is conclusively presumed to have been proved on the trial.

The verdict was accordingly regular, and the judgment is affirmed.