## CITY ICE DELIVERY CO. v. UNITED STATES.

### No. 5883.

United States Court of Appeals Fourth Circuit.

Argued June 30, 1949.

Decided Aug. 4, 1949.

These companies became the sole owners of the stock in the, taxpayer on a percentage basis as follows:

| | Percent |
| --- | --- |
| Southern Ice & Coal Company | 46 |
| Standard Ice & Fuel Company | 40 |
| Avant Fuel & Ice Company | 8 |
| Wiggins Ice & Fuel Company | 6 |

Frank Thomas Miller, Jr., and F. A. McCleneghan, Charlotte, N. C. (E. McArthur Currie, Charlotte, N. C., on brief), for appellant.

Robert R. Reynolds, Jr., Special Assistant to the Attorney General (Theron Lamar Caudle, Asst. Atty. Gen.; Ellis N. Slack and A. F. Prescott, Sp. Asst.s. to the Atty. Gen.; T. A. Uzzell, Jr., U. S. Attorney, Asheville, N. C., and Francis H. Fairley, Asst. U. S. Attorney, Charlotte, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal by the City Ice Delivery Company (hereinafter designated as taxpayer) from a decision of the United States District Court for the Western District of North Carolina, which denied taxpayer the recovery of $3,523.54 (with interest thereon) paid by taxpayer as federal income and declared value excess profits taxes during the fiscal years ending January 31, 1939, January 31, 1940, and January 31, 1941.

We first summarize briefly the essential facts, which were found by the District Court and about which there is very little dispute.

The taxpayer is a corporation organized under the laws of North Carolina with its principal office and place of business in Charlotte, North Carolina. It was organized on February 1, 1928, by Southern Ice & Coal Company, Standard Ice & Fuel Company, Avant Fuel & Ice Company, and Wiggins Ice & Fuel Company, all of Charlotte, North Carolina, for the purpose of setting up the taxpayer as the common delivering agency and retailer for the ice produced by these four ice manufacturers.

Each of the four organizers and stockholders of the taxpayer entered into a contract with the taxpayer covering the period of February 1, 1928, to January 31, 1937, by the terms of which each agreed to manufacture and sell, and the taxpayer agreed to buy at a specified price a certain percentage of the total requirements of the taxpayer as the selling agent and retailer for such four stockholders; and the manufacturers agreed that they would employ the taxpayer as their sole selling agent for all ice they manufactured except that delivered by them otherwise than in competition with the taxpayer. These contracts specified the respective quantities of ice to be furnished to the taxpayer by each of its stockholders on a percentage basis, using as a measure for determining the percentage of each the production capacity and selling volume enjoyed by each of the four manufacturers prior to and on the date when the taxpayer corporation was organized.

The contract with Wiggins Company was renewed through January 31, 1938, and subsequently through March 14, 1938. On December 23, 1937, the taxpayer gave to Wiggins Company an option either to continue operation under this contract or to discontinue the manufacture of ice and to receive from the taxpayer $2 per ton on 6 percent of ice tonnage based upon 35,000 tons. This option specified that the payment of $2 per ton was based on anticipated earnings of the taxpayer of $3.60 per ton or less, and further provided that if the taxpayer should earn as much as $4 per ton Wiggins Company would be entitled to receive $2.25 per ton for 6 percent of the total tonnage sold by the taxpayer.

The alleged reasons for the granting of this option were that the other three manu-

facturers of ice were producing a surplus and it was believed that the platform of Wiggins Company could be operated and ice delivered from the other three plants to this platform cheaper than it could be procured from the Wiggins Company as a manufacturer.

On March 14, 1938, the Wiggins Company executed a paper writing confirming its election to exercise this option and payments were made to the Wiggins Company during the years in question here on the basis of the March 14, 1938 contract.

During these taxable years, the Wiggins Company refrained from manufacturing ice for sale to or in competition with the taxpayer, and also made available to the taxpayer at its expense its selling platform, and thereby the taxpayer acquired the use of such platform, the use of the Wiggins name in connection with its sale from such platform, and the opportunity to sell ice to the Wiggins customers. Payments made by the taxpayer to Wiggins Company thereunder totaled $3,730.84 for taxpayer's taxable year ended January 31, 1939; $3,897.44 for the taxable year ended January 31, 1940; and $3,252.22 for the taxable year ended January 31, 1941.

During the taxable years, taxpayer pursued the policy of lending to customers or prospective customers certain ice boxes and other types of refrigerating equipment as a business-getting practice to encourage such customers to purchase ice and ice equipment from the taxpayer. The taxpayer's agent kept records of the items so loaned. The taxpayer decided, rather than to repossess this equipment and risk alienating the customers, to abandon title to such equipment and donate it to the customers. The value of this equipment donated to the customers was deducted by the taxpayer at cost.

The taxpayer further claimed deductions on certain equipment in its inventory which it claimed had diminished in value below its cost to taxpayer.

Three questions are thus presented for our decision:

(1) Were the amounts paid by the taxpayer to Wiggins Ice and Fuel Company in the taxable years deductible in computing its taxable income for those years as an ordinary and necessary business expense under Section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. § 23 (a) (1) (A), or as a capital expenditure depreciable under Section 23(*l*) (1) of the Code or as an item in the cost of the ice?

(2) Was the value of equipment donated by the taxpayer to its customers and prospective customers deductible under Section 23(a) (1) (A) of the Internal Revenue Code in computing its net income for the taxable years in which such donations were made?

(3) Was the amount by which the market value of certain items of taxpayer's inventory had diminished below their cost deductible under Section 22(c) or the Internal Revenue Code, 26 U.S.C.A. § 22(c), in computing its net income for the taxable years? We consider these questions in their order.

We think the District Court correctly held that the payments made by taxpayer to Wiggins, under the option of Wiggins to be paid for ice which it agreed not to produce, were not deductible as "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Int.Rev.Code § 23(a) (1) (A).

It is well settled that such deductions can be claimed by the taxpayer only if it brings itself squarely within the terms of the statute, since such deductions are matters of legislative grace, not matters of right. Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; Jones v. Commissioner, 9 Cir., 103 F.2d 681; Barbour Coal Co. v. Commissioner, 3 Cir., 74 F.2d 163, certiorari denied 295 U.S. 731, 55 S.Ct. 643, 79 L.Ed. 1680. And the determination of the Commissioner against deductibility here carries a presumption of correctness with the burden on the taxpayer (which we believe it has not shouldered) of proving that this determination is incorrect. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212.

To be deductible here, the item must be not only a business expense but also such an expense that is both *ordinary* and *necessary*. These be rather strong adjectives which the courts have often been called upon to define and apply. Thus Mr. Justice Douglas, in Deputy v. DuPont, 308 U.S. 488, 495, 496, 497, 60 S.Ct. 363, 367, said:

"Ordinary has the connotation of normal, usual, or customary. * * * The fact that an obligation to pay has arisen is not sufficient. It is the kind of transaction out of which the obligation arose and its normalcy in the particular business which are crucial and controlling. * * * Congress has not decreed that all necessary expenses may be deducted. Though plainly necessary they cannot be allowed unless they are also ordinary."

See, also, Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171; Welch v. Helvering, 290 U.S. 111, 113–114, 54 S.Ct. 8, 78 L.Ed. 212; Hales-Mullaly, Inc. v. Commissioner, 10 Cir., 131 F.2d 509, 511; A. Giurlani & Bro., Inc. v. Commissioner, 9 Cir., 119 F.2d 852, 855–857.

It takes indeed a strained interpretation of "ordinary and necessary business expenses" to include within this category the payments made by taxpayer to Wiggins. Certainly these payments were neither customary nor ordinary in such a business as the taxpayer was conducting. The District Court correctly found the payments were not made to reduce competition; for there was no competition between Wiggins and taxpayer. From an economic standpoint, these payments constituted not a benefit, but indeed a clear-cut detriment, to taxpayer. The option insured solely to the benefit of taxpayer's stockholders, not in their role as stockholders of taxpayer but in their distinctive individual capacities.

Taxpayer deliberately undertook to pay Wiggins for ice which Wiggins agreed not to produce, so that taxpayer's stockholders (individually) could sell their surplus ice and reap larger profits. By elementary mathematics, it is clearly demonstrable that it was more expensive for taxpayer to operate under the option. In the absence of any showing of a valid economic purpose to taxpayer in making these payments to Wiggins, it would seem to follow that these payments just cannot qualify as ordinary and necessary business expenses; for these payments, if business expenses at all rather than gratuitous beneficences to the individual stockholders, were both unnecessary and extraordinary.

Whether or not specific expenditures constitute ordinary and necessary business expenses is a question of fact, requiring the taxpayer to adduce evidence to prove this fact. And no such evidence has been here adduced by the taxpayer. See, Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171; Geo. J. Haenn, Inc. v. Commissioner, 3 Cir., 147 F.2d 682; Fontana Power Co. v. Commissioner, 9 Cir., 127 F. 2d 193, 195; Birnbaum v. Commissioner, 7 Cir., 117 F.2d 395.

We find no merit in taxpayer's contention that these payments to Wiggins were made in large part for the use of the Wiggins platform and the Wiggins sign and name. The very language of the option, under which taxpayer "agrees to maintain and keep open, during the hot months, the platform of the Wiggins Ice and Fuel Company," militates against this contention. It seems a fair deduction that the benefits to taxpayer were few and incidental compared to the benefits accruing to Wiggins under this arrangement.

In this connection we think the taxpayer can derive little help from certain cases, all clearly distinguishable, upon which it rather confidently relies. See, Mobile Delivery Co. v. Commissioner, 8 B.T.A. 1224; Black River Sand Corporation v. Commissioner, 18 B.T.A. 490; Carboloy Co. v. Commissioner, 2 T.C. 1267, decided July 2, 1943, (1943 P-H T.C.Mem.Dec. par. 43,-325.)

The contention that the Wiggins payments are deductible on the score of *cost* is fallacious, for it flies right in the face of economic reality, which is here controlling. The parties with which we are here primarily concerned are taxpayer and Wiggins; the transaction, a sale of ice. But

as between these two parties, the transaction under the option was just the opposite of a sale—a non-sale; and, by the same token taxpayer was a non-buyer, Wiggins a non-seller And *cost* here ordinarily indicates the price, or part of it, paid by the buyer to the seller as consideration for the sale of goods. See, Black's Law Dictionary: "That which is actually paid for goods. Buck v. Burk, 18 N.Y. 337; Esterman-Verkamp Co. v. Rouse, 211 Ky. 791, 278 S.W. 124, 127." Similar is Funk & Wagnalls New Standard Dictionary: "That which has to be given for a thing in order to procure it; especially the price paid * * *." The cases of Orono Pulp & Paper Co. v. United States, D.C., 34 F. 2d 714; Carthage Spoke Co. v. Commissioner, 21 B.T.A. 1135; Marshall Field & Co. v. Commissioner, 14 B.T.A. 755, are not in point. In each of these cases there was a real sale and the item set up as cost was a bona fide part of the price actually paid by an actual buyer to an equally actual seller. Nor does the recent case of Sullenger v. Commissioner, 1948, 11 T.C. 1076 help the taxpayer. In that case, the Tax Court allowed as part of the cost of goods the excess over the O.P.A. price, though this excess was illegal. Judge Disney dissented. But here again, though the excess was illegal, it was actually paid by the buyer to the seller for goods delivered under a sale.

Nor can it be truly said that the Wiggins payments constituted a part of the price paid by taxpayer for the ice furnished to it by its other three stockholders. This ice was sold under contracts entirely separate from the Wiggins option, and this option played no part whatever in determining the price per ton which taxpayer was to pay these stockholders for the ice they furnished to taxpayer. To include, then, the Wiggins payments under the item of *cost* would be at best, in commercial practice, an anomalous misnomer.

■ There is even less merit in taxpayer's claim that the Wiggins payments constituted a capital expenditure depreciable under Section 23(*l*) (1) of the Internal Revenue Code. This is clear from even a casual reading of the apposite Treasury Regulations, 103, Section 19.23(1)-3. Taxpayer failed utterly to make the showing herein required. See, Appeal of General Equipment Co., 2 B.T.A. 804; Appeal of Boonville National Bank, 2 B.T.A. 352; Appeal of Market Supply Co., 3 B.T.A. 841. The Black River Sand Corporation and the Carboloy Co. cases (cited supra) are not in point, for in those cases the contracts were of definite duration permitting a proper computation for depreciation.

In addition to the objection that taxpayer here has supplied no facts as to contract duration, etc., which would make possible a proper computation of depreciation, taxpayer is faced, under Section 23 (*l*) (1) of the Code, with the insurmountable obstacle that the Wiggins expenditures did not result in the acquisition of any real, intangible capital asset to be depreciated. We have already pointed out that, on the facts, the Wiggins contract could not have had as its purpose the elimination of competition with taxpayer, since none existed.

■ Taxpayer, too, has utterly failed to make the requisite showing in order to claim as a deductible item (under 23(a) (1) (A) of the Revenue Code as an ordinary and necessary business expense) the value of the equipment first lent, and then given, by taxpayer to its customers. No showing was made of the value of this equipment at the time of its donation by taxpayer; or as to its age or condition at that time. Only the original cost of this equipment was shown. Nor was there any evidence adduced by taxpayer as to whether taxpayer had been allowed a prior deduction on the basis of a writedown on this equipment. Yet taxpayer claims as a deduction the entire original cost to it of this equipment. And, as to some of this equipment, taxpayer did not know and could not prove whether these particular items had, or had not, been actually donated to its customers.

■ Finally, we think the District Court correctly disallowed the deductions claimed by taxpayer for amounts by which it reduced its inventory value of certain countercases and refrigerators upon the basis of the taxpayer's own appraisal. It is at

least open to question whether this equipment was properly includable in taxpayer's inventory. The provisions of Treasury Regulations 103, Section 19.22(c)-1 seem to apply only to inventory of goods held for sale. There is no proper showing in the record that these countercases and refrigerators were really held by taxpayer for sale. Further, taxpayer did not satisfy the requirements of Regulations 103, Section 19.22(c)-2 which provides that inventories should be recorded, properly computed and summarized ,and should be preserved as part of taxpayer's accounting records. Nor did taxpayer, as this Regulation requires, "satisfy the Commissioner of the correctness of the prices adopted." And these claimed deductions were based solely on the appraisal of taxpayer, without any adequate evidence as to this particular equipment concerning its cost, its date of purchase, its type of nature, or its condition at the time of these appraisals by the taxpayer.

The judgment of the District Court, disallowing these claimed deductions of taxpayer and dismissing taxpayer's complaint, is affirmed.

Affirmed.