**LILLY et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 6204.

United States Court of Appeals
Fourth Circuit.

Argued March 12, 1951.

Decided April 2, 1951.

Richard E. Thigpen, Charlotte, N. C. (Arthur M. Jenkins, Charlotte, N. C., on the brief), for petitioner.

I. Henry Kutz, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and Lee A. Jackson, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Lehrich & Lehrich, New York City, on the brief for Association of Independent Optical Wholesalers as amicus curiae.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and WATKINS, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a decision of the Tax Court of the United States sustaining the disallowance by the Commissioner of Internal Revenue of certain alleged "trade discounts" claimed by Thomas B. Lilly and Helen W. Lilly (hereinafter referred to as taxpayers), trading as the City Optical Company of Wilmington, North Carolina, totaling $61,601.95 and $60,021.65 for the years 1943 and 1944 respectively, and against Helen W. Lilly, trading as the Duke Optical Company, in the amounts of $6,568.87 and $4,798.35 for the years 1943 and 1944 respectively.

The facts are not disputed. Taxpayers, who are engaged in the business of grinding, fitting and selling eye glasses and spectacles, entered into oral contracts with various oculists whereby taxpayers agreed to pay the oculists one-third of the retail price of all eye glasses and spectacles purchased by patients sent to them by the oculists. The evidence shows that the oculists did not inform their patients of this rebate arrangement but such a disclosure was made only when it was specifically requested by individual patients.

The sole issue in this case is whether these rebates paid by taxpayers to the doctors were deductible under § 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. § 23 (a) (1) (A), as "ordinary and necessary" business expenses.

■ We feel that the answer to this must be in the negative. As the courts have frequently said, the allowance of a deduction is a matter of legislative grace and not a matter of right. Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; White v. United States, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172; City Ice Delivery Co. v. United States, 4 Cir., 176 F.2d 347. Once, therefore, the Commissioner has made a determination against deducti-. bility, the burden is upon the taxpayer to prove the Commissioner wrong. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L. Ed. 212.

■ The wording of the statute that in order to be deductible, an expense must be "ordinary and necessary" is sufficiently broad to require interpretation by the courts. As we said in City Ice Delivery Co. v. United States, 4 Cir., 176 F.2d 347, 350, 351: "These be rather strong adjectives which the courts have often been called upon to define and apply." Through this process of judicial interpretation has been evolved the rule that no deduction should be allowed as "ordinary and necessary" which violates sharply defined public policy. Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171; National Brass Works v. Commissioner, 9 Cir., 182 F.2d 526; Commissioner of Internal Revenue v. Longhorn Portland Cement Co., 5 Cir., 148 F.2d 276; Rugel v. Commissioner, 8 Cir., 127 F.2d 393. We must examine these kickbacks in the light of this rule.

■ This court is not at all impressed with the argument that such an inquiry amounts to judicial legislation, for we are only interpreting what Congress meant by the use of the words "ordinary and necessary." As Mr. Justice Black said in Commissioner of Internal Revenue v. Heininger, 320 U.S. at page 473, 64 S.Ct. at page 253, 88 L.Ed. 171: "The Bureau of Internal Revenue, the Board of Tax Appeals, and the federal courts have from time to time, however, narrowed the generally accepted meaning of the language used in Section 23 (a) in order that tax deduction consequences might not frustrate sharply defined national or state policies proscribing particular types of conduct."

In Winfield, Public Policy in The English Common Law, 42 Harv.L.Rev. 76 (1928), the author states (p. 97): "But the better view seems to be that the difficulty of discovering what public policy is at any given moment certainly does not absolve the bench from the duty of doing so. The judges are bound to take notice of it and of the changes which it undergoes, and it is,

immaterial that the question may be one of ethics rather than of law. The basis for their decision is 'the opinions of men of the world, as distinguished from opinions based on legal learning.' Of course it is not to be expected that men of the world are to be subpoenaed as expert witnesses in the trial of every action raising a question of public policy. It is the judges themselves assisted by the bar, who here represent the highest common factor of public sentiment and intelligence."

"The relationship of patient and physician is to the highest possible degree a fiduciary one, involving every element of trust and confidence" Stryker, Courts and Doctors, (1932) p. 9.

To such a relationship, one *uberrimae fidei*, the oft-quoted words of Chief Judge (afterwards Mr. Justice) Cardozo, in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1, are peculiarly applicable: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate." Quite germane, too, is the statement in 6 Williston on Contracts, (Rev.Ed.), 4907: "Clearly an agreement, for a secret consideration, to influence one with whom the promisor stands in a confidential relation is illegal. * * * or to influence one who may consult him in a confidential relation, * * *." See, also, Amer.Law Inst. 2 Restatement, Contracts, § 570. We certainly will not lend the force of any opinion of this court to sanction, as an "ordinary and necessary" expense of the optician's business, the making and carrying out of such unconscionable and reprehensible contracts for secret kickbacks to a doctor.

A doctor owes the duty of undivided loyalty to his patients, and a contract which violates this duty is unenforceable and opposed to public policy. One cannot at the same time serve two incompatible masters. Wolfe v. International Reinsurance Corp., 2 Cir., 73 F.2d 267; Reilly v. Beekman, 2 Cir., 24 F.2d 791; City of Findlay v. Pertz, 6 Cir., 66 F. 427, 29 L.R.A. 188. Reilly v. Beekman, supra, was a suit for breach of contract. Beekman had agreed to pay Reilly one-half of all legal fees he collected from clients referred to him by Reilly. In holding the contract unenforceable, the court said, 24 F.2d at page 794: "It cannot be disputed that, if Reilly was in a fiduciary relation to Mrs. Trenkman when he recommended Beekman to her as her attorney, he could not agree to profit from the business arising out of the introduction without her knowledge and consent. This is because Mrs. Trenkman was entitled to his disinterested advice as to the attorney to be recommended to her. That advice was not likely to be disinterested, if affected by the consideration of whether or not he could make a profit out of the recommendation of a particular person."

The evil we find in these kickbacks is the receipt by the physician of secret profits through dealings with his patients. Surely, the doctor is assuming an utterly inconsistent position when he recommends an optician without disclosing that he is being paid for the recommendation. This corrupt practice obviously involves, or tends to promote, serious evils: (1) the prescription by the doctor of glasses where not actually necessary; (2) more expensive lenses than really needed; (3) recommendation of an inferior optician; (4) artificial increase in the cost of glasses by the inclusion of the physician's commission, for which the physician affords no value to the patient. The bait of the secret consideration, which taxpayers offered to the doctor, hopelessly divides the trust interest of the doctor.

At least two states have thought this practice so insidious as to pass legislation forbidding it. See California Business and Professional Code § 650, Deering, 1949, Supp.; Revised Statutes of Washington, Anno. § 10185–14, Remington 1949 Supp. We hold, since these kickbacks corrupt the fiduciary relationship between physicians and patient and result in a violation of the duty of loyalty, they are opposed to public policy and, therefore, are not de-

272

·ductible as "ordinary and necessary" business expenses by these taxpayers.

That these deductions are opposed to public policy is borne out by the standards set by the medical profession itself. We find among the Principles of Medical Ethics of the American Medical Association, Chapter III, Art. 1, § 5, (1943), the following: "It is unprofessional to accept rebates on prescriptions or appliances, or perquisites from attendants who aid in the care of patients." And in Chapter III, Art. VI, § 4: "When a patient is referred by one physician to another for consultation or for treatment, whether the physician in charge accompanies the patient or not, it is unethical to give or to receive a commission by whatever term it may be called or under any guise or pretext whatsoever."

The record and the opinion of the Tax Court also show that these kickbacks had been condemned by the Medical Society of North Carolina—the State in which these taxpayers were chiefly engaged in business.

We are not impressed by the argument of counsel for taxpayers that this custom of secret kickbacks from opticians to doctors is so common and so widespread that such payment must be deductible because the Commissioner of Internal Revenue has issued no regulation specifying that such payments are not deductible. No decision precisely in point has been cited to us. Nor does the record disclose either that the Commissioner had been definitely apprised of this practice or that he had ever made any ruling on it. Certainly if other opticians, as did taxpayers here, camouflaged these payments as "trade discounts," there was little to put the Commissioner on notice that the deductions claimed were the secret kickbacks from optician to doctor.

Had taxpayers desired a specific ruling on this question by the Commissioner, this could easily have been obtained by a full and frank disclosure of the exact nature of these so-called "trade discounts." The Commissioner can hardly be expected, by specific regulations, to cover every form of commercial practice.

The decision of the Tax Court of the United States is affirmed.

Affirmed.