**S. B. BRINSON and Leota L. Brinson, Appellants,**

v.

**Laurie W. TOMLINSON, Director of Internal Revenue for the District of Florida, Appellee.**

**No. 17399.**

United States Court of Appeals Fifth Circuit.

Feb. 26, 1959.

*Rehearing Denied April 22, 1959.*

---

---

Michel G. Emmanuel, Tampa, Fla., Thomas L. Marr, of Mabry, Reaves, Carlton, Fields & Ward, Tampa, Fla., for appellants.

Meyer Rothwacks, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., Robert F. Nunez, III, Asst. U. S. Atty., Tampa, Fla., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., James L. Guilmartin, U. S. Atty., Robert F. Nunez, III, Asst. U. S. Atty., Tampa, Fla., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

This appeal concerns a claimed overpayment of income tax for the year 1952, arising out of the disallowance of a deduction of an attorney's fee paid by a partnership of which the taxpayer, S. B. Brinson, was a member. The district court adopted as its findings of fact a stipulation entered into between the parties.[1] Upon those facts, the court made

---

1. "Early in 1950, the Brinson Construction Partnership, which at one time consisted of Charles Ebersbach, Theodore Ebersbach, S. B. Brinson and Chalmers M. Parker, came under investigation by the Intelligence Department of the Tampa Office of the Internal Revenue Service. The case was entitled in the file and upon the records of the Treasury Department as 'Theodore Ebersbach, et al.' There followed numerous conferences with the special agent in charge and other special agents, together with Internal Revenue Agents. These conferences were held in Tampa. From the inception of the investigation until final disposition of the case, the Brinson Construction Partnership and the Plaintiff,

conclusions of law adverse to the taxpayer.[2]

The questions presented on appeal are whether the district court erred in holding that the attorney's fee was neither deductible by the partnership as an ordinary and necessary expense of its construction business, within the meaning of Section 23(a) (1) (A) of the 1939 Code, nor by the taxpayer as a non-busi-

S. B. Brinson, were represented by the law office of Mabry, Reaves, Carlton, Anderson, Fields & Ward. During the course of the investigation, amended returns were prepared and filed on behalf of the partnership and the individual partners, and the taxes computed on the individual returns were paid. No penalties, however, were paid at that time.

"Chalmers M. Parker, one of the two remaining partners, appeared before the special agent in charge on two occasions, and the Plaintiff, S. B. Brinson, upon one occasion. Additional conferences were held with the Intelligence Unit where questions were propounded of the partnership's bookkeeper and one of the partnership's foremen.

"On October 6, 1950, the local Intelligence Unit of the Internal Revenue Service advised the partners that criminal prosecution had been recommended for the year 1944. A conference was granted by the Penal Division of the Treasury Department in Atlanta which was attended by the partners, S. B. Brinson and Chalmers M. Parker, with their attorneys. Following this conference in November, 1950, the partners were notified that the Penal Division had recommended criminal prosecution. During the month of November, 1950, amended returns were filed on behalf of the Brinson Construction Partnership, S. B. Brinson, and Chalmers M. Parker, and the tax computed thereon was paid.

"Subsequent conferences were held with Treasury Department Officials in Washington, and on December 12, 1950, the case was forwarded to the Justice Department recommending criminal prosecution.

"After the case was forwarded to the Department of Justice, additional conferences were held and the partners were notified that criminal prosecution had been authorized against S. B. Brinson. On January 12, 1951, charges were filed and warrant issued against S. B. Brinson by U. S. Commissioner for the Southern District of Florida.

"During April of 1951, it was suggested by Counsel for Plaintiff S. B. Brinson, that he was not in sufficiently good health to stand trial. This was supported by a letter from Taxpayer's physician stating that he was suffering from high blood pressure and a heart condition.

"On April 27, 1951, Taxpayer suffered a heart attack which required his hospitalization. Due to Taxpayer's ill health, and in conformance with Justice Department policy to decline prosecution in a case in which the health of the Taxpayer would be endangered by standing trial, it was decided on September 5, 1951 to decline prosecution and, on October 3, 1951, the charges were withdrawn. No indictment was returned against the partnership nor against either partner.

"After the criminal features of the case were concluded, a determination was made as to Plaintiff's civil liability for the years 1943 through 1947 inclusive, and a final settlement was made on the basis of the deficiency determined by the Government, interest, and the 50% fraud penalty.

"A part of the work done and services rendered by the law firm of Mabry, Reaves, Carlton, Anderson, Fields & Ward throughout the period covered by this Stipulation was devoted to presentation to the Government of the reasons and arguments which, in the opinion of the Taxpayer, would justify the Government's declining to commence criminal proceedings against Chalmers M. Parker and the Plaintiff, S. B. Brinson. A part of the services performed was in connection with the determination of the civil tax liability of the partnership and the partners. The law firm charged a fee of $22,500.00 which was paid by the partnership and deducted on its 1951 income tax return. This deduction was disallowed by the Commissioner which resulted in an increase of $22,500.00 in the partnership's taxable income, and an increase of $11,250.00 in Plaintiffs' taxable income."

2. "The Court concludes that the payment of $22,920.10 by Brinson Construction Company, a partnership, as attorney fees was not an ordinary and necessary business expense of the partnership and was not deductible from gross income on the partnership's return of income; the Court further concludes that such payment of attorney fees was not an ordinary and necessary non-business expense of the individual partners and was not deductible from gross income by each partner individually and that therefore defendant is entitled to judgment on this issue."

ness expense, within the meaning of Section 23(a) (2) of the Code,[3] and whether the district court erred in denying the plaintiffs' motion for leave to offer testimony to supplement the stipulation of facts.

■ The parties agreed that, "A part of the services performed was in connection with the determination of the civil tax liability of the partnership and the partners," but the stipulation is silent as to any allocation of the fee to such services. As to such part of the fee, therefore, the taxpayer failed to meet the burden of proving the amount to which he was entitled.[4]

The other part of the lawyers' work and services was to forestall criminal prosecution of the taxpayer and of Charles M. Parker, his partner. The stipulation was silent as to the nature of the alleged criminal activities and their relationship, if any, to the business of the partnership. The stipulation failed to show that the attorney's fee was an ordinary and necessary expense of the partnership business within Section 23(a) (1) (A), or a nonbusiness expense of the taxpayer for the production or collection of income or for any other purpose listed in Section 23(a) (2). We do not, therefore, reach the question of whether an attorney's fee expended to forestall criminal prosecution may, under circumstances not here proved or stipulated, be allowed as a deduction under either of those provisions.[5]

At the time the stipulation was agreed on, February 6, 1957, two other issues were in dispute between the parties. On one of those, the "Debt Issue," the case was tried before a jury on the same day and the jury returned its verdict in favor of the plaintiffs. Later the Government conceded the other issue, the "Building Sales Issue." Later still, after the "Attorney's Fee Issue" had been submitted to the court on the stipulation of facts and a brief filed on behalf of the Director, the plaintiffs proposed a supplemental stipulation to provide as follows: "All of the fraudulent acts of which plaintiff, S. B. Brinson, was accused arose out of the business activities of the partnership."

The Director refused to enter into the supplemental stipulation. The plaintiffs then, on April 30, 1957, moved the court to permit the taking of testimony to establish that the fraudulent acts of which S. B. Brinson was accused arose out of the business activities of the partnership. The Director opposed said motion "unless the verdict of the jury, returned on February 6, 1957, be set aside and the entire case set down for retrial." On May 9, 1957, after hearing argument of counsel, the district court denied the motion for leave to take testimony.

■ The stipulation was entered into at the suggestion of the plaintiffs'

---

3. Internal Revenue Code of 1939:
   "§ 23. *Deductions from gross income.*
   "In computing net income there shall be allowed as deductions:
   "(a) [As amended by Sec. 121(a), Revenue Act of 1942, c. 619, 56 Stat. 798] *Expenses.—*
   "(1) *Trade or business expenses.—*
   "(A) *In general.—*All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *
   *       *       *       *       *
   "(2) *Non-trade or non-business expenses.—*In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. * * *." 26 U.S.C.A., 1952 ed., Sec. 23.

4. Burnet v. Houston, 1931, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991; New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Helvering v. Taylor, 1935, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623.

5. See Commissioner v. Heininger, 1943, 320 U.S. 467, 471, 64 S.Ct. 249, 88 L.Ed. 171; Commissioner v. People's Pittsburgh Trust Co., 3 Cir., 1932, 60 F.2d 187, 189; Commissioner of Internal Revenue v. Schwartz, 5 Cir., 1956, 232 F.2d 94.

attorney. Most of the terms of the stipulation were suggested by that attorney. Its provisions were carefully considered on each side before agreement was reached. There was no claim that anything had been inadvertently included in the stipulation, or that any overreaching or fraud was involved. One of the issues had then been conceded by the Government and a second issue decided by a jury in favor of the plaintiffs. The plaintiffs were not willing to have the verdict set aside and the entire case set down for re-trial so as to restore both sides to the position they were in before the stipulation was agreed on. Justice sometimes requires that stipulations made under misapprehension or without full knowledge of all the facts, or as the result of mistake, be set aside.[6] This is not such a case, and the district court did not abuse its discretion in denying the motion to permit the taking of testimony to supplement the stipulation.

The judgment is therefore

Affirmed.

CAMERON, Circuit Judge (dissenting).

I am unable to agree with the majority opinion that the trial court did not commit reversible error in concluding that the $22,920.10 paid by the partnership was not a deductible expense and in refusing to permit appellants, upon timely motion, to make proof that "all of the fraudulent acts of which plaintiff, S. B. Brinson, was accused arose out of the business activities of the partnership." The only thing involved in the hearing before the court at that time was whether appellants were entitled to recover the $22,920.10 they had paid out to their attorneys. The Director opposed the granting of the motion, and the court below denied it and, for failure of proof concerning the attorneys' fee, entered judgment against appellants.

I.

Examining the record before us first without the proffered supplemental proof, it is plain that there was no real issue between the parties as to whether the acts of fraud charged against Brinson were acts performed in the partnership business. The record shows undisputedly that the partnership paid the attorneys' fees and included the item as a deduction on the partnership return. The Commissioner disallowed the item in his examination of the partnership return. The stipulation shows: "Early in 1950, the Brinson Construction Partnership, which at one time consisted of Charles Ebersbach, Theodore Ebersbach, S. B. Brinson and Chalmers M. Parker, came under investigation by the Intelligence Department of the Tampa Office of the Internal Revenue Service. The case was entitled in the file and upon the records of the Treasury Department as 'Theodore Ebersbach, et al.' "

It was further stipulated that, October 6, 1950, the local Intelligence Unit "advised the partners that criminal prosecution had been recommended * * *." Following several conferences "the partners were notified that the Penal Division had recommended criminal prosecution." Thereafter Brinson Construction Partnership filed amended returns and additional taxes were paid. Later, the Department of Justice considered the case "and the partners were notified that criminal prosecution had been authorized against S. B. Brinson."

We find no contention in the Government's brief that the fraudulent acts alleged against Brinson were not solely in connection with the business activities of the partnership. On the other hand, in defining the two questions presented by the appeal the Government mentioned only the criminal prosecution feature and the court's action in refusing to permit the supplemental proof to be offered.

6. Carnegie Steel Co. v. Cambria Iron Co., 1902, 185 U.S. 403, 414, 22 S.Ct. 698, 46 L.Ed. 968; Aronstam v. All-Russian Central Union of Consumers' Societies, 2 Cir., 1920, 270 F. 460, 464; Russell-Miller Milling Co. v. Todd, 5 Cir., 1952, 198 F.2d 166, 169.

The farthest position taken by the Government in its argument is that the evidence is silent as to the precise nature of the alleged criminal activities, but the record does show that it was the activities of the partners in their construction business which lay at the base of the accusations. Under the circumstances, I do not think that the lower court had any right to assume, in the face of what did appear in the record, that the tax authorities were pursuing the members of the partnership for activities unrelated to the partnership business. I think, therefore, that the record and the briefs of the parties show that all parties recognized that the fraudulent acts of which Brinson was accused were committed in connection with the business activities of the partnership; and that we must, in any event, decide the case on the merits.

## II.

The motion for leave to supplement the stipulation so as to remove all doubt about that question ought, moreover, in my opinion, to have been granted. Neither the affidavit opposing the motion for leave to introduce this proof nor the Director's brief points out that any injustice would result if the appellants were granted leave to make the proof. The motion set up, and nobody denied, that appellants' attorney had failed to include this in the stipulation "through oversight." The motion was filed on April 30, 1957; it was denied on May 9th; and final order was entered on May 21st.

The stipulation did not recite that it contained all of the facts, or that it was not to be supplemented by proof. The Supreme Court had before it a stipulation not unlike this in Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 714, 46 L.Ed. 968, when it said: "Stipulations are ordinarily entered into for the purpose of saving time, trouble, or expense * * *. But while the stipulation is undoubtedly admissible in evidence it ought not to be used as a pitfall, and * * * we think that, upon giving notice in sufficient time to prevent prejudice to the opposite party, counsel may repudiate any fact inadvertently incorporated therein." And see the decision of this Court in Russell-Miller Milling Co. v. Todd, 1952, 198 F.2d 166.

In that case counsel was permitted to repudiate one of the statements in the stipulation. Here, counsel seeks only to supplement the stipulation by evidence consistent with it and which was inadvertently omitted. As I read the record and the briefs, no advantage would have been gained by appellants and no loss would have accrued to appellee beyond the work which would have been entailed by supplementing the briefs already filed before the court. I think that the genius of the Federal Rules of Civil Procedure would be frustrated by approving the holding of the lower court, and that this Court has said so in graphic words, Alabama Great Southern Railroad Co. v. Johnson, 1944, 140 F.2d 968, 972. In that case, the attorneys for the Railroad Company had requested a charge which the court embraced in its general charge and the same attorneys nevertheless objected to it when the opportunity was given them before the jury retired. The court below refused to change its charge because it had been led to make it by a portion of a refused charge requested by the Railroad's attorneys. This Court reversed, using this language:

> " * * * Even if defendants' instruction 'E', which contained the complained of language, had been marked 'given' instead of 'refused', and had been given exactly as the defendants had requested it, defendants could have timely pointed out and confessed the error in their own charge and obtained a proper instruction effecting its cure. * * The Federal rules, by aiding in converting a lawsuit from a battle of wits and a succession of traps and pitfalls into a calm and ordered procedure for the discovery of truth, were designed for the purpose of avoiding the very situation which this case presents, *the loss of rights, the prevention of* (sic) *justice,*

*through errors which, by timely request for correction, are called to the attention of the court.* \* \* \* Rules which were adopted with the express purpose of relieving litigants from traps and pitfalls and procrustean rulings or results may not be applied, as they have been here, to produce them." [Emphasis supplied.]

### III.

The stipulation admitted that "A part of the services performed was in connection with the determination of the civil tax liability of the partnership and the partners." The Director's argument against allowance of the fee is thus epitomized:

" \* \* \* Nor were any facts stipulated from which the District Court could possibly have determined what part of the fee was paid for the determination of civil liability, and what part for representation to forestall criminal prosecution. \* \* As to legal expense incurred in connection with the determination of civil liability, there was a failure of proof on the taxpayer's part with respect to this aspect of the case, and the District Court was therefore correct in disallowing the claimed deduction of the $22,500 fee in its entirety."

The failure of proof urged by the Government, therefore, is not failure to prove that the money was spent in connection with the partnership's business, but failure to prove the dollars and cents allocable to the civil portion of the tax and penalties. Consider also its further argument: "In the instant case the payment of the attorney's fee to forestall criminal tax charges against the taxpayer was not a business expense within the meaning of Section 23(a) (1) (A), but a 'personal expense', because \* \* \* the crime charged is necessarily a personal crime and the defense cannot in the nature of things be a matter of business; \* \* \*." The authority upon which the Government relies to support this thesis, besides a decision of the Tax Court and one of the Court of Claims, is the dissenting opinion of Judge Rives in our case of Commissioner v. Schwartz, 232 F.2d 94.

The majority finds it unnecessary to decide whether attorneys' fees paid to forestall criminal prosecution against the partners would be a deductible expense. Assuming what is not controverted in the record or the Government's brief, that the threatened criminal prosecution involved only matters arising from the partnership business, I think that the entire attorney's fee would be deductible and that we ought to hold that this is true. Such is, in my opinion, the effect of our holding in Schwartz, supra, 232 F.2d at page 101,[1] no criminal prosecution having been instituted in the case before us.

In the age-old struggle between organized society and the individual this nation[2] has achieved a fair measure of balance. In no field of that relationship,

---

1. The annotator in A.L.R.2nd Series Supplement Service, 1948–1957, page 1584, thus sums up the holding of that case: "The Supreme Court tends to restrict the violations of public policy which will support a disallowance of deductions. Denial of deduction for attorney fees is limited to services in unsuccessful defense of criminal prosecution and does not extend to services in matter out of which a criminal charge may possibly arise. Com'r v. Schwartz, 5 Cir., 232 F.2d 94, affirming 22 T.C. 717, holding public policy not violated in allowing deduction of fees for services in setting liability for income tax and civil fraud penalties although taxpayer was subsequently indicted and convicted of fraud."

The Supreme Court has never intimated that a business connected expense was not deductible because those by whom it was paid, presumed to be innocent, were charged with criminal violations. Cf. Lily v. Commissioner, 4 Cir., 1951, 188 F.2d 269, reversed 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769, and Commissioner v. Heininger, 1943, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171.

2. As pointed out by Mr. Justice Jackson in "The Supreme Court in the American System of Government," page 75 et seq.

it seems probable, does the Government possess such a downhill pull as in the enforcement of the federal income tax laws. Starting with the unparalleled premise that the Government's claim extends to every dollar of the taxpayer's income from whatever source derived, and that what he is able to save for his own uses by way of deductions, exemptions, and the like comes to him only as a matter of grace, the taxpayer is engaged in an uphill fight all the way.

Any assessment made by the Commissioner,[3] however fantastic it may be, travels always upon a presumption of correctness. Largely, he makes his own rules through the issuance of regulations having the force of law. He can compel the taxpayer and all with whom he deals to come before him or his agents and testify under oath and bring all their books and records. He can levy against the taxpayer heavy civil penalties for failure to file his return or tardiness therein, or underestimating or fraudulently concealing his income. He can shackle the taxpayer to a point of helplessness by jeopardy assessments and warrants of distraint.

When the Commissioner (or his representatives) chooses to go into litigation he has the advantage of formulae built upon circumstantial evidence worked out by experts, such as the net worth method, which impose an additional exceedingly heavy burden upon the taxpayer. He claims and practices the right[4] to avail himself, in any proceeding before a jury, of examination of the income tax returns of all prospective jurors.

Lurking necessarily in the background of many tax investigations is the ominous suggestion of possible criminal prosecution. In a close case it is inevitable that somewhere along the line the unit which develops criminal cases gets involved in the investigation. The matter before us furnishes a typical illustration of proceedings in such a case. Most of the time the appellants and their lawyers were talking with those engaged primarily in collection of taxes by civil means, activities were in progress by those who prosecute for crime. Who is there wise enough to separate the two —to say which conference, which activity (short of grand jury indictment) belonged to the criminal side, which to the civil?

Surely taxpayers are entitled to the assistance of lawyers and other experts. Faced by probably the greatest galaxy of such experts ever assembled in this country, it certainly is not the policy of the law to discourage the employment of lawyers by the taxpayer. That is what these appellants did. From the beginning of the investigation to this day, they are presumed to be innocent of any crime. The proffered proof would have established beyond question what already fairly appears in the record—that every service the lawyers performed was business connected. It is admitted that part of their services had to do with civil matters alone. Surely the rudiments of fair play, as well as the law, condemn a course which cannot but discourage taxpayers in availing themselves of the services of lawyers. Those employed in this case were entitled to be paid for all of the services rendered, and to be paid by the business, which would probably have been crippled or destroyed without their assistance. I think the Schwartz case and the cases there cited stand for this principle and that we should, by following it, avoid lengthening the rope or steepening the slope. I think the court below should have permitted the proffered proof so that its decision would have

---

3. In most cases, a euphemistic term employed to describe a lowly functionary in the field, or a coterie of them, struggling for advancement by producing income for the exchequer.

4. See Treasury Regulation 26 C.F.R., § 458.32 and United States v. Costello, 2 Cir., 1958, 255 F.2d 876, 882–883, certiorari denied 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551. And cf. Martin v. United States, 5 Cir., 266 F.2d 97.

**38**

been based upon all of the facts; and that, without this proof, it should have found for the appellants on the record before it.

I respectfully dissent.

Rehearing denied; CAMERON, Circuit Judge, dissenting.